## L. E. McCORMICK ET AL. v. C. L. JESTER ET AL.

Decided January 16, 1909.

**1.—Elections—Qualification of Electors—Payment of Poll Tax.**

Where the voter exhibited a tax receipt dated "1-2-1907" showing the payment of the State, county and school polls and a penalty, and in a contest of the election testified that it was his recollection that he came in January to pay his poll tax, but would not be positive; but the collector testified that no poll tax receipt was issued to such voter in January, that the pay-

ment in question was made February 1, and was reported in his report of February collections as paid on the first day of that month, and that the receipt did not purport to be a poll tax receipt but property tax receipt and showed the payment of a penalty, which is only charged when payment is made after January 31st, a finding that the elector was qualified was manifestly against the great weight and preponderance of the evidence.

**2.—Findings of Fact—Weight of Evidence—Appeal.**

An Appellate Court will not revise the findings of the trial court where the findings are supported by evidence, yet if such findings are manifestly against the great weight and preponderance of the evidence, this rule will not prevail.

**3.—Elections—Illegal Votes—Presumption—Burden of Proof.**

Where votes have been received and counted by the election officers they are prima facie legal, and the burden is upon those contesting the election to show that they were illegal.

**4.—Same—Electors.**

If the district or territory in which the vote is cast is not large or populous and if the witness shows that his acquaintance with the inhabitants is such that he could scarcely fail to know any person who may have resided therein long enough to become a voter, his evidence that he does not know and has never heard of such a person as the one named as casting the vote, together with evidence that soon after election the alleged voter could not be found in the district wherein all voters must reside, is sufficient to shift the burden upon the party claiming that the vote be counted, and require him to show affirmatively that the vote was cast by a qualified and bona fide voter.

**5.—Same—Exemptions from Payment of Poll Tax.**

A voter who claimed to be exempt from the payment of a poll tax because he was blind or at least disabled, but kept a cold drink stand and waited on customers, could get the right articles called for, receive money and make change, and put soda water bottles in the ice box and assort them, was not blind, nor permanently disabled within the meaning of the election law. Gen. Laws 1905, chapter 9, secs. 6 and 12.

**6.—Same.**

One whose leg was afflicted and had been in the same condition since early childhood, but with this exception was physically hearty, whole and robust, was not permanently disabled under the statute; and his vote without the payment of a poll tax was illegal.

**7.—Same.**

That the voter's left hand was crippled in a gin in 1884 did not show that he had lost a hand or that he was permanently disabled within the meaning of the election law and therefore exempt from the payment of a poll tax.

**8.—Same.**

Evidence that a voter had had his leg and both arms broken on different occasions, and had lost an eye, his arms and leg being well at the time he voted, did not show that he was permanently disabled within the meaning of the election law, and so exempt from the payment of a poll tax.

**9.—Idem Sonans.**

Boulden is not *idem sonans* with Bourland.

**10.—Electors—Residence.**

Where the vote was in ward 4 of a city at an election held on June 15, 1907, the ward being the voting precinct, and the evidence showed that the voter had lived in that ward but had rented a house in ward 3 on June 1, and slept there, and on same day took out insurance on his furniture in ward 3, and paid bills for gas and telephone service at his residence in that ward, the vote was illegal. His residence was in ward 3 and the Constitution and

election law require all electors to vote in the precinct of their residence. Constitution, art. 6; sec. 2; Gen. Laws 1905, p. 522.

### 11.—Same—Time.

In determining the length of the voter's residence in the county where he offers to vote, the day of his arrival or the day of election should be excluded. A vote cast in an election held on June 15, 1907, by one who first arrived in the county on December 15, 1906, was illegal.

### 12.—Elections—Ballots—Change of Ballot.

Where a voter who was one of the election officers took a ticket, numbered and deposited it in the ballot box and had his name placed on the list, and afterward, having failed to scratch the ticket, had the ballot box opened and took out the ticket and marked it so as to make it an anti-prohibition ticket, the vote could not be counted. After he had voted he could not withdraw or change the ballot.

### 13.—Same—Contest of Election—Right of Suffrage—Rejection of Votes.

If the right of a voter to vote has been denied any person duly qualified, it may be shown in a contest of the election; and if the number of voters whose right has been so denied is large enough to materially affect the result it will vitiate the election.

### 14.—Same.

Where a legal voter was denied the right to vote, his uncontroverted testimony that he would have voted for prohibition required the trial court to so find.

### 15.—Same—Ballots.

Where a ballot was signed by the presiding officer of the election on the back, but the number was placed on the face instead of the back, and the uncontradicted testimony of the presiding officer was that all ballots at that box were counted except those mutilated or scratched with a blue pencil, it was error to find that the particular ballot was not counted by the officers of election, and to refuse to count it on a contest.

### 16.—Same—Contest of Election.

In a contest of an election there was no error in refusing to allow an examination of the affidavits made by persons who did not have their poll tax receipts with them at the time of voting, which were in ballot boxes with the votes, in the absence of pleading attacking such affidavits as defective or illegal.

### 17.—Same—Contest of Election.

Where in a contest of an election the ballot boxes containing the votes alleged to be illegal were opened under an order of the court, it was not error to refuse to order the opening of the boxes from precincts in which none of the votes were challenged.

### 18.—Same—Notice of Election.

Under the provision of the statute requiring the notices of a local option election to be posted or caused to be posted by the clerk, posting the notice with his knowledge and consent is a substantial compliance and will be sufficient, especially where the usual number of voters participated in the election and no contention is made that any elector failed to vote for lack of notice. Revised Statutes, art. 3387, Acts 29th Leg., chapter 11, sec. 33.

### 19.—Contest of Election—Parties—Security for Costs.

Where the result of a local option election was declared to be against prohibition, and in a contest the county judge and county attorney were made parties defendant, there was no error in overruling a motion by the contestants to compel members of an organization of anti-prohibitionists to make themselves parties and give security for costs. The proceedings are statutory and the statute does not require contestees to give security for costs.

**20.—Same—Service.**

In a contest of a local option election service on the county judge and upon the county attorney's assistant at the office of the county attorney within the thirty days provided by law, was sufficient.

**21.—Same—Time of Filing Suit—Statute.**

The statute taking effect August 10, 1907, and providing that any qualified voter of any county which has heretofore voted on local option may contest said election under the provisions of the Act, and if no contest is filed within sixty days from the taking effect of the Act it shall be conclusively presumed that said election was valid in all things, had the effect of enlarging the field of inquiry in such contests, and hence, where a suit was filed by voters to contest a local option election held in a county on June 15, 1907, the result of which was declared on June 22, 1907, within sixty days from the taking effect of the statute, a plea in abatement that the contest could not be maintained because not filed within thirty days as required by the previous statute was properly overruled. Revised Statutes, art. 3397, Gen. Laws, 30th Leg., p. 447.

**22.—Consolidation of Suits—Judicial Discretion.**

It is within the discretion of the trial judge whether suits shall be consolidated when they are between the same parties and involve the same subject matter; and a party will not be heard to complain of a consolidation of such cases when no injury appears.

**23.—Contest of Election—Trial by Jury—Cause.**

A contest of a local option election is not a cause within the meaning of the provision of the Constitution that in the trial of all causes in the District Court either party shall, upon application made in open court, have the right of trial by jury. The statute which authorizes the contest does not provide for a trial by jury, and as the trial does not involve either personal or property rights, neither party is entitled to a jury.

**24.—Pleading—Amendments—Judicial Discretion.**

It is within the sound discretion of the trial court to decline to permit amendments to the pleadings after an announcement of ready for trial and during its progress, and unless an abuse of such discretion is shown his ruling will not be revised.

**25.—Contest of Election—Contestants—Right to Maintain Contest—Waiver.**

Where the contestants in a contest of a local option election alleged that each was a resident citizen and property owner and qualified voter in the county, and the contestees did not plead in abatement as to the capacity of plaintiffs to maintain the suit nor raise such an issue in the trial, an objection to the right to maintain the suit was waived.

**26.—Cities and Towns—Population—Special Charter.**

The provision of the election law relating to the procurement of exemption certificates by persons exempt from the payment of a poll tax who reside in a city of ten thousand inhabitants or more, does not provide the method for ascertaining the number of inhabitants; and where the Legislature has granted a city a special charter, which it could not do if the city does not contain more than ten thousand inhabitants, the grant is sufficient to show that such city is within that class, and the provision of the statute applies.

**27.—Judgment—Contest of Election—Powers of Appellate Courts.**

On appeal from a judgment in a contest of a local option election, the Court of Civil Appeals under the statute is authorized to subtract illegal votes and add legal ones, and, after full investigation and upon finding that no such irregularities exist in the election as to render the true result impossible to be arrived at, or very doubtful of ascertaining, render judgment for the party found to have received the greatest number of legal votes. Revised Statutes, art. 3397, amendment of Act of 1907 (Gen. Laws 1907, p. 447.)

Appeal from the District Court of Navarro County. Tried below before Hon. L. B. Cobb.

*Richard Mays* and *Treadwell & Tarver,* for appellants.

C. L. *Knox,* County Attorney; *W. W. Ballew* and *Gibson & Callo-way,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—On June 15, 1907, a local option election was held within and for Navarro County, Texas, for the purpose of determining whether the sale of intoxicating liquor should be prohibited therein. On June 26, 1907, the Commissioners' Court canvassed the returns of said election and declared the result to be against prohibition by a majority of twelve votes, there being 2488 votes for prohibition and 2500 votes against. Prior to this, local option had for two years been in force in the county. On July 26, 1907, L. E. McCormick and nine others as contestants, appellants here, filed this suit, contesting said election, and made C. L. Jester, county judge, and C. L. Knox, county attorney, of Navarro County, contestees, parties defendant. On the 31st day of August, 1907, the same contestants filed a second suit against the same parties contesting the election on substantially the same grounds set up in the first suit. Thereafter, on the 21st day of September the contestants filed a motion to consolidate the two suits, which motion was granted and the suits consolidated. On September 30, 1907, the contestants filed their first amended original petition, in which it was alleged in substance, that the result of said election as declared by the Commissioners' Court was false and untrue and was not a correct statement of the legal votes cast; that votes which were actually cast for prohibition were fraudulently counted as having been cast against prohibition, and that upon a recount the true result would be found to be in favor of prohibition instead of against prohibition; that lawful ballots cast for prohibition and received by election officers were, upon different illegal pretexts, rejected and not counted for prohibition, and specifying the number of lawful ballots for prohibition so rejected at the different voting boxes; that a large number of voters were unlawfully influenced to vote against prohibition, who would not have otherwise done so, by reason of the existence of a large and formidable combination of persons having unlimited means which were corruptly used in the purchase of poll tax receipts, hiring persons to drum up and excite persons to go to the polls and vote against prohibition, the purchasing of votes, the use of liquor and cigars on election day and other illegal practices, bribery, and threats, all done for the purpose of carrying said election against prohibition at all hazards; that forty-nine persons voted against prohibition in Corsicana, a city of more than 10,000 inhabitants, without obtaining exemption certificates as they were required to do by law; that a large number of persons were permitted to vote against prohibition who were illegal voters, in that they had failed to pay their State and county poll tax; that a large number of persons were also permitted to vote against prohibition who were illegal voters because they, while liable, had failed to pay

their city poll tax due the city of Corsicana, Blooming Grove and Frost; that a large number of persons were permitted to illegally vote against prohibition in precincts other than the precinct in which they resided; that there were persons permitted to illegally vote against prohibition who had not lived in the State one year, nor the county six months; that persons not citizens, but subjects of a foreign power, were permitted to vote against prohibition; that persons under the age of twenty-one years were unlawfully permitted to vote against prohibition; that qualified voters, favorable to prohibition, were refused the right to vote; that persons were illegally permitted to vote against prohibition upon tax receipts paid and issued after February 1, 1907, preceding said election; that by reason of the foregoing the direct result of said election, based upon the legal votes cast, would show a majority in favor of prohibition, and that the votes of which complaint is made, were all illegal under the laws of Texas. The names of the alleged illegal voters were set out. That all of said votes were cast and counted against prohibition by the election officers; and that the county clerk failed to post the notices of election as directed by law.

Defendants filed their trial answer on October 8, 1907. It consisted of pleas to the jurisdiction; pleas in abatement; general demurrer; general denial; denied that there was any illegality, fraud, bribery or corruption in any manner or form in connection with said election, but that a majority of the qualified voters voted against prohibition, and claiming the election to have been honestly and legally conducted; that a number of persons who were not qualified voters because they had not paid their State, county and city poll tax, who voted in precincts other than that in which they resided, who had not lived in the county for six months or the State one year, and for other reasons specified, were permitted to vote for prohibition and whose votes should be rejected; that certain ballots cast in favor of anti-prohibition were not counted by the election officers; that the Act of the Legislature requiring persons in cities of over 10,000 population, not subject to the payment of poll taxes, to procure exemption certificates, imposed an unjust burden and was therefore void; that the Act of the Legislature granting a special charter to the city of Corsicana was void; that a number of persons illegally voted for prohibition in the city of Corsicana who had not obtained exemption certificates as required by law; and asking that the ballot boxes be opened and the votes and ballots complained of be inspected and rejected, and that all of said votes be recounted and the direct and legal result of said election be inquired into, which would be shown to be in favor of anti-prohibition.

On November 16, 1907, contestants filed their supplemental petition replying to the trial answer of defendants. Some of the demurrers and exceptions were overruled and others sustained.. Those material to this appeal will be hereinafter specified. The trial began on November 18, 1907, and continued during that week, and was then postponed until December 9, after which time the trial continued until it was completed, on December 21. Under the pleadings and written agreement of counsel the court appointed a commission of

four persons—two "pros" and two "antis"—to recount the votes cast for and against prohibition, to inspect all ballots, to ascertain how each person voted, whose vote was in question, etc., and that the work of the commission should have the same effect as if done in open court; was to be "regarded by the court as conclusive" and "was to be received by the court as a fact." There was no exception to the report of the commission. It was unanimously made by the four commissioners, and was introduced in evidence without objection. The case was tried before the court without a jury. On December 21, 1907, the court below found in favor of contestees, appellees here, upholding the validity of the election, and refused to set it aside. Judgment was accordingly entered. The court below filed conclusions of law and fact. Under the court's finding the majority of twelve votes in favor of anti-prohibition, as declared by the Commissioners' Court, was reduced to five. In his conclusions of law and fact the court says: "I sum up forty-one 'anti' and thirty-five 'pro' improperly voted, and on count of ballots (1) one net gain for contestants. The result is that the majority of twelve against prohibition, as declared by Commissioners' Court, is reduced to five, and judgment for contestees." Contestants duly excepted to the court's conclusion of law and facts and in open court excepted to said decision and judgment and perfected an appeal.

Appellants alleged that Corsicana was a city of more than ten thousand inhabitants, and that some thirty-eight persons residing in said city not subject to payment of poll tax had voted against prohibition, whose votes were so counted, and that same were illegal because said voters had not procured exemption certificates within the time required by law from proper authorities. Appellees demurred to said allegations on the grounds that there was no provision in the Constitution of the State of Texas requiring persons residing in cities of more than ten thousand inhabitants, not subject to the payment of poll tax, to procure certificates of exemption, and that such statutory requirement was in conflict with and repugnant to the Constitution of the State, and that the Legislature had no power to impose a qualification for suffrage not fixed by the Constitution. Appellees further demurred on the ground that said legislative enactment imposed a burden on a particular class not imposed by the Constitution, which burden applied to said particular class of voters only and discriminated unfairly against them, and was class legislation, and therefore unconstitutional. The trial court sustained these demurrers and this action of the court is made the basis of appellants' first and second assignments of error.

The petition set up the names of thirty-eight voters who were alleged to be over sixty years of age, and who voted in the city of Corsicana without procuring the exemption certificate. Having found on an examination error in the record, independent of this ruling, for which the judgment must be reversed, it does not become necessary for this court to pass upon these assignments.

Appellants' assignments of error from the third to the ninth, inclusive, involve the correctness of the holding of the trial court in

sustaining contestees' exceptions to section four of contestants' petition. These assignments have been carefully considered by us and because we are of the opinion they are without merit they are overruled. Section four of appellants' petition consists of general and indiscriminate charges of fraud, intimidation and bribery upon the part of persons not named, supposed to be unfavorable to prohibition, but contains no specific allegations. The pleading is of extreme length, makes no attempt to identify any illegal voter or any person charged with improper conduct.

The tenth and eleventh assignments complain of the court in failing to hold that John C. Crouch and J. C. Tipton, who voted against prohibition at the Dresden box and whose votes were so counted, were illegal voters and in not deducting said votes from the total number of votes cast and counted against prohibition at said box. The contention is that these parties failed to pay their poll tax prior to the first day of February, 1907. At the time Crouch voted he did not exhibit a poll tax receipt, but made affidavit that he had left his poll tax receipt at home. When Tipton voted he exhibited two property tax receipts in the usual form of a property tax receipt, one containing the following: "State and School Poll $1.50, County Poll $.25, Penalty $.18, Total taxes $1.93." The eighteen cents being the ten per cent penalty on $1.75 added upon delinquent payment of taxes. This receipt appears to be dated "1-2-1907," in handwriting of J. C. Garner, Tax Collector of Navarro County. The word "Poll" is written therein in ink. The other was a property tax receipt of the same date as the first and for eighty-six cents, to which was added a penalty of ten cents. Tipton testified on the trial that he and Crouch came to Corsicana together to pay their taxes; that Mr. Crouch has two pieces of paper exactly like his. He says his recollection is that he came in January to pay his poll tax, but would not be positive. He could not say it was in January. Crouch was not present at the trial and did not testify. Garner, the tax collector, and Hamilton, his deputy, each testified in substance that when a poll tax was paid prior to the first day of February a duplicate is kept in the office. The number of the party making the payment is put down instead of his name. Tipton's number is 6222, and Crouch's is No. 1494. That there was no poll tax receipt issued to Crouch or Tipton in January, 1907. That the day of payment by these parties was February 1, 1907; that when payments are made prior to the first day of February, they go into the January reports to the county, and when made in February they go into the February reports. The payments by Crouch and Tipton went into the February report; that a penalty is only added when the payment is made after the 31st of January. The payments by Crouch and Tipton went in the February report of the tax collector, his books showing payment February first; that the tax receipts did not purport to be the regular poll tax receipts, but property tax receipts and showed the payment of a penalty, which is only charged in case the tax is delinquent. An Appellate Court will not revise the findings of the trial court where the findings are supported by evidence, yet if such findings are manifestly against the great weight and preponderance of the evidence, this rule will not prevail.

(Zapp v. Michaelis, 58 Texas, 275; Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 88; Texas & Pac. Ry. Co. v. Levine, 87 Texas, 440; Best v. Kirkendall, 107 S. W., 933.) It is true that Tipton's receipt is dated "1-2-1907," which would ordinarily mean January 2, 1907. But Tipton would not testify that the money was paid in January, 1907, and the tax collector and his deputy both swore it was paid on February 1, 1907. The payment of a penalty and the failure of the tax collector to include it in his January report, and the failure of his office to contain a duplicate poll tax receipt, are cogent facts tending to support the contention of contestants that these parties paid their poll tax in February. We sustain these assignments and hold these votes illegal, and that the court erred in counting them against prohibition.

The thirteenth, fourteenth, fifteenth and sixteenth assignments assign as error the trial court's failure to hold the votes of J. C. Garner, W. B. Bradle, W. Powell and G. F. Oliver illegal, and in not deducting them from the total number of ballots cast and counted against prohibition. Garner voted ballot No. 108 at ward 2 voting box, Bradle voted at ward 1 voting box, Powell at ward 4 voting box and Oliver at ward 3 voting box, in Corsicana, and each voted against prohibition and their votes were so counted. Contestants alleged that Garner, Bradle, Powell and Oliver while subject thereto, failed to pay their State, county and city poll tax, prior to February 1, 1907, preceding the election; that they had neither lived in the State one year nor in the county six months, and did not vote in the precinct of their residence; and it was further alleged that fraudulent votes were cast and counted against prohibition "which were voted under fictitious and assumed names by persons who had already in said election voted one or more times against prohibition in the city of Corsicana." And it was contended that said purported parties had no real existence in fact, and that said names were fraudulently used by "repeaters" in said election. It was shown that neither Bradle, Oliver nor Powell paid a poll tax. J. C. Garner, the tax collector, also voted in ward 2 a prohibition ballot which he thinks was No. 73, and it is clear he did not vote ballot No. 108. The presiding officer of the election in ward 4 testified that he is not acquainted with G. F. Oliver or W. Powell. He had no recollection of men claiming to bear those names, voting at the fourth ward. The presiding officer of the election in ward 2 testified that he did not know J. C. Garner, but believes a negro by that name voted in his ward. He did not know him, had never seen him before and had never heard of him. Byrd, another election officer, testified that he had lived in the ward thirteen years and never knew or heard of a negro down there by the name of J. C. Garner. Two deputy sheriffs testified to having made a careful search for a negro by the name of J. C. Garner, but that they were unable to find any such person. The presiding officer of the election in ward 1 testified that he had lived in the ward since 1877, and did not know a man therein by the name of Bradle. John Redden, who seems to have been employed by the contestees to assist in looking after the evidence on contestees' side of the case, testified: "I never found a fellow named W. B. Bradle. I hunted for him some." He

never found G. F. Oliver or W. Powell. The mail carriers and distributing clerks at the postoffice testified that they had never heard of, or distributed mail to W. B. Bradle, G. F. Oliver or W. Powell. One of the attorneys for the contestants had advertised in the newspapers for these parties and had acquired no information as to them. The votes of these parties having been received by the election officers and counted were *prima facie* legal and the burden was upon contestants to show that they were illegal. The evidence as to the illegality of these votes was circumstantial. As to whether such evidence will be sufficient to overcome the presumption of legality, Mr. McCreary in his valuable work on Elections, says: "If such district or territory (the district or territory in which the vote is cast), is not large or populous and if the witness shows that his acquaintance with the inhabitants is such that he could scarcely fail to know any person who may have resided therein to become a voter, his evidence may be quite satisfactory, especially if it further appears that soon after the election the alleged nonresident voter could not be found in the district within the limits within which all voters must reside. Proof of this character must at least be regarded as sufficient to shift the burden upon the party claiming that the vote of such alleged nonresident be counted, and require him to show affirmatively that he is a *bona fide* resident." McCreary on Elections (4th ed.), sec. 469; see also McKinney v. O'Connor, 26 Texas, 15 to 20. The territory in which the voters whose votes are here challenged extended only over a ward of the city of Corsicana. Witnesses who had lived for years within the respective wards did not know and had never heard of the alleged voters. Not one of the mail carriers or distributors of the city had heard of either of them. Officers of the law, whose duty it was to serve process, after what seems to have been diligent search, could not find them. The evidence was manifestly sufficient to overcome the presumption that these ballots were cast by legal voters, and required of contestees affirmative evidence that they were *bona fide* voters. The trial court erred in not holding these votes illegal and deducting the same from the votes cast against prohibition.

The court also erred in not holding the vote of Henderson Taylor, who voted against prohibition at the Chatfield voting box, illegal. This voter had not paid his poll tax and the great preponderance of the evidence was that he had not arrived at the age to be exempt from paying the same. The court erred in not deducting this vote from the number of votes cast against prohibition at the Chatfield box.

The court erred in holding the vote of J. D. Pilkington at the Re box valid, and in failing to deduct the same from the votes cast at said box against prohibition. This voter did not have a poll tax. He was forty-two years old. He claimed to be exempt from payment of a poll tax by reason of being blind, or at least disabled. The statute exempts those from the payment of a poll tax who are permanently disabled or blind. Gen. Laws 1905, p. 521, sec. 5. This voter kept a cold drink stand at Re. He testified: "I waited on my trade and customers myself. Whenever a customer would call for any certain drink I would give it to him, and when he would hand me the money I would give him back the change. I would put my soda water bot-

tles in the icebox and assort them out myself." He could wait on his customers, get the right article called for and made his own change. He was not blind, nor permanently disabled within the meaning of the election law. (Act Leg. 1905, chap. 11, secs. 6 and 12; Bigham v. Clubb, 42 Texas Civ. App., 312.)

A. M. Milligan was not a legal voter and the court erred in not so holding and in not deducting his vote from the total votes cast at ward 2° against prohibition. Milligan was forty-eight years old. He testified that his right leg was afflicted and has been in its present condition since he was six years old. With this exception he says he is physically hearty, whole and robust. He does not use a crutch and weighs 170 pounds. He was not exempt from the payment of a poll tax, and not holding a poll tax receipt when he voted his vote was illegal.

F. M. Humphries was fifty-six years old, had not paid a poll tax and voted against prohibition at Tupelo. He claimed to be exempt for that he had lost an arm or was at least disabled. His left hand was crippled in a gin in 1884. The testimony fails to show that he has lost a hand or arm or that he is permanently disabled within the meaning of the law. His vote was illegal, and the election officers having counted it the court erred in not deducting it from the total number of votes counted against prohibition at the Tupelo box.

The evidence was insufficient to show that G. W. Boyd, who voted at the Blooming Grove box, was exempt from the payment of poll tax. Boyd voted against prohibition and had not paid his poll tax. He had a leg broken and on different occasions each arm had been broken and he had lost one eye. This all occurred many years ago. His leg and arms are well now. He was not permanently disabled within the meaning of the statute. The court erred in not holding his vote illegal and deducting the same from the total number of votes cast and counted against prohibition at said box.

J. D. Bourland voted a pro ballot at the Barry box. Contestees plead that J. D. *Boulden* did not reside in the Barry precinct and that his vote was illegal. The court found that John Boulden voted an illegal pro ballot at Barry, and deducted this vote from the total votes cast at that box for prohibition. This was error. The poll list did not show that J. D. Boulden voted at this box. The evidence does not show, as held by the trial court, that J. D. Bourland is sometimes called Boulden. *Boulden* is not *idem sonans* with *Bourland*. The proof did not correspond with the allegation.

S. E. Ross voted against prohibition at ward 4 of Corsicana. He did not live in ward 4, but in ward 3. He had lived in ward 4, but on the 1st of June he rented a house in ward 3, and slept there. He took out insurance on his furniture on June 1 in ward 3. He paid his bill for gas consumed in the month of June at his residence in ward 3, also a bill for telephone service at such residence for the month of June. The Constitution requires all electors to vote in the precinct of their residence. (Const., art. 6, sec. 2.) At the time he voted, June 15, Ross lived in ward 3. The court erred in counting this vote against prohibition. (Gen. Laws 1905, p. 522; Roper v.

Scurlock, 29 Texas Civ. App., 464; Cooley's Const. Lim. (7th ed.), 754.)

John Wooland had been living in Dallas County. He came to Corsicana on the 11 o'clock morning train, December 15, 1906. He registered at the Malloy house and stayed there until the next Sunday and then went to his uncle's at Re and lived there until the election, June 15, 1907. He lacked one day of having resided in the county six months next preceding the election. The day of his arrival or the day of election should be excluded in determining the length of his residence in the county. His vote was illegal and was cast against prohibition. It was error to count it.

M. Thummell took a ticket, numbered it and deposited it in the ballot box and had his name recorded on the poll list at the Drane precinct. He was one of the election officers. He failed to scratch the ticket. The ballot box was afterward opened and he took back the ticket and marked it so as to make it an anti-prohibition ticket, and again deposited it in the ballot box. This was error. After he had voted he could not withdraw or change his ballot. (10 Am. & Eng. Enc. Law, p. 706 (2d ed.); Roach v. Malotte, 23 Texas Civ. App., 400.)

I. N. Cunningham offered to vote at ward 2 of Corsicana. He was not permitted to vote. He came to Navarro County in March, 1906. He did not hold a poll tax receipt and was not required to. The trial court held that he was a legal voter and should have been allowed to vote and would *probably* have voted for prohibition. Cunningham testified, and his testimony is not controverted, that he *would* have voted for prohibition, and the court should have so found. If the right of a voter to vote has been denied to any person duly qualified, it may be shown in case of a contest. And if the number of voters whose right has been so denied is large enough to materially affect the result it will vitiate the election. McCreary on Elecs., sec. 527 (4th ed.).

Sid Harper offered to vote in the precinct of his residence, was denied the right because he did not hold a poll tax receipt. He became twenty-one years of age May 25, 1906, and hence was not required to have paid a poll tax. He would have voted for prohibition, and the court should have so found, instead of finding he would *probably* have so voted.

The commission appointed by the court to count the votes returned to the court two unnumbered ballots from the Frost voting box. There being no pleading by the parties that ballots were illegal because not numbered, the court held that if the election officers counted these ballots, then the court should count them, but further held that the evidence failed to show that these ballots were counted by the election officers, the exact finding by the court being "two unnumbered 'pro' ballots seem not to have been counted and I do not count them." The evidence did not show that the election officers failed to count these ballots. On the contrary, the evidence fairly shows that they were counted and the court erred in refusing to count them.

At ward 1 of the city of Corsicana a vote signed by the presiding officer, J. M. McCammon, on the back but not numbered, was voted

for prohibition. This ballot also had the figure 1 on its face. The court refused appellants' motion to add this ballot to the total number of votes cast in favor of prohibition at that box on the ground that the election officers had not counted it. There is no evidence that the election officers failed to count this ballot. On the contrary, the presiding officer testified that all ballots at this box were counted, except those that were mutilated or scratched with a blue pencil. There were mutilated ballots reported from this ward. But they were in a separate box, and this ballot was not in this box. It was not mutilated or scratched with a blue pencil. The court erred in not counting it and adding it to the total number of votes cast for prohibition in that ward.

At the Kerens box a total of 370 votes were cast. The election officers counted 215 for prohibition and 152 against. Three ballots, Nos. 110 and 118 and one unnumbered ballot, do not seem to have been counted. The commission counted 213 for prohibition and 150 against, and reported three ballots, Nos. 185, 290 and 325, to the court for its consideration. The court counted No. 110 and 118, which the election officers and commission failed to count, valid anti ballots and rejected the unnumbered ballot. The court further held 290 a valid anti ballot and 185 a valid pro ballot, and held 325 void for uncertainty. This gave the antis three valid votes of these uncounted votes and the pros one, making a net gain of two anti votes over the commission's count. The court held that the antis had made a gain of three and gave them a gain of three in the count. This was error. They should only be given a gain of two votes. At ward 3 voting box in the city of Corsicana there were 297 votes cast. The commission counted 145 pro votes and 142 anti, and returned ballot 225 to the court. They also returned nine ballots which the election officers had not counted, because of being marked with a blue pencil. Vote 225 was held a good anti vote and was added to the commission count, making 143 anti votes. Of the nine votes marked with blue pencil the court held six valid pro votes and three valid anti. These added to the commission count gave the pros 151 votes and the antis 146. This accounts for all the votes cast—297. This was a total gain of five votes for the pros. The court only gave them three. This was error. They were entitled to two more votes than the court gave them at this box.

There was no error in the court's action in refusing to allow contestants to examine the numerous affidavits made by persons who did not have their poll tax receipts with them at the time of voting. These affidavits were contained in the ballot boxes with the votes. There was no pleading attacking these affidavits as being defective or illegal. Nor did the court err in refusing to order the ballot boxes, from those precincts in which none of the votes were challenged, opened. The court ordered the ballot boxes containing the votes alleged to be illegal opened, and they were opened. It is contended that the notices of election were not posted by the clerk or caused to be posted by him. The notices were posted with the knowledge and consent of the clerk and this was a substantial compliance with the statute. Rev. Stats., art. 3387; Acts 29 Leg., chap. 11, sec. 33.

Again, it seems from the evidence the usual number of voters participated in the election, and no contention is made that any elector failed to vote for lack of notice. (Wallis v. Williams, 110 S. W., 787; Buchanan v. Graham, 36 Texas Civ. App., 468; McCreary on Elections (4th ed.), sec. 178, et seq.; Norman v. Thompson, 30 Texas Civ. App., 537.)

There was no error in overruling contestants' motion to compel the members composing the organization of anti-prohibitionists of Navarro County to make themselves parties and give security for costs. The proceedings were statutory and the parties required by the statute were made contestees. The statute does not require the contestees to give security for costs. It follows from the above remarks the judgment must be reversed.

Appellees have cross-assigned errors which we are asked to consider in the event we reverse the judgment of the trial court. The first and thirteenth cross-assignments challenge the sufficiency of the notice of contest and service upon contestees. The suit was filed July 22, 1907, and service was had the same day on the county judge and the assistant county attorney. C. L. Knox, county attorney, was absent from the State of Texas, and could not be served. On the 26th day of July, 1907, the county attorney having returned to Texas, accepted service. In addition he was served with citation by the sheriff. The election was held on June 15, and the Commissioners' Court canvassed the returns and declared the result on June 22, 1907. Thus it appears that notice of the grounds of contest and filing of suit was served on contestees within the thirty days provided by law. The county attorney being absent from the State service on his assistant at the county attorney's office was sufficient. The court did not err in so holding and in overruling contestees' plea in abatement, under which ruling this contention arises. (Rev. Stats., arts. 1798, 1800, 1804t and 1804u; Rayner v. Forbes, 52 S. W., 568; Kidd v. Truett, 28 Texas Civ. App., 620; Rev. Stats. 3397; Acts 30th Leg., 1907, chap. 8, page 447.)

The second and fourth cross-assignments present the propositions that the court erred in refusing to sustain the contestees' plea in abatement to cause No. 3084 between the same parties, because not instituted within thirty days after the date of declaring the result of the election by the Commissioners' Court. This suit was filed August 31, 1907. The Thirtieth Legislature passed an Act amending article 3397 of the Revised Statutes, which Act went into effect August 10, 1907. (Gen. Laws 30th Leg., p. 447.) By section 2 of this Act it is provided: "Any qualified voter of any county, justice precinct or subdivision of any county, or any town or city within this State which has heretofore voted on local option may contest said election under the provisions of this Act, and if no contest is filed within sixty days from the taking effect of this Act, it shall be conclusively presumed that said election as held was valid in all things and binding upon all courts."

The suit was filed within sixty days from the date of taking effect of the Act and was within time. This Act enlarges the field of in-

quiry in contests of local option elections and it seems clear that the object of filing the second suit was to secure the benefits of this Act.

Upon motion of contestants these suits were consolidated. There was no error in consolidating them. The suits were between the same parties and the subject matter of each was the same. It has been repeatedly held that it is within the discretion of the trial judge whether suits shall be consolidated in such cases. It does not appear that contestees were injured by the consolidation. (Young v. Gray, 65 Texas, 101; Harle v. Langdon, 60 Texas, 560; Morris v. Wood, 1 W. & W., sec. 1311; Texas & Pac. Ry. Co. v. Hays, 2 W. & W., sec. 390; Raymond v. Cook, 31 Texas, 382; Spencer v. James, 10 Texas Civ. App., 332; Johnson v. Luling Mfg. Co., 24 S. W., 998.)

Error is assigned to the court's action in holding that appellees were not entitled to a trial by jury and in compelling appellees to try before the court. The Constitution provides that "in the trial of all causes in the District Court the plaintiff or defendant shall upon application made in open court, have the right of trial by jury," etc. (Const., art. 3, sec. 12.) The question then arises, is the contest of a local option election a "cause" within the meaning of this section of the Constitution? In the case of Odell v. Wharton, 87 Texas, 173, the Supreme Court held that a contested election is not a "civil suit or cause," and therefore can not be tried by the proceedings had in such cases. The statute under which the contest is authorized does not provide that the same shall be tried before a jury. The trial does not involve either personal or property rights and is neither a suit at law or in equity, but is a political question to be tried before a special tribunal with limited powers. The court did not err in refusing contestees a trial by jury. As bearing on this holding see Robinson v. Wingate, 36 Texas Civ. App., 68; 7 Ency. of Plead. & Prac., 393-4; Williamson v. Lane, 52 Texas, 335; Calverley v. Shank, 28 Texas Civ. App., 473; Martin v. Mitchell, 32 Texas Civ. App., 387; McCreary on Elecs., 4th ed., sec. 454; Messer v. Cross, 26 Texas Civ. App., 37; San Jacinto Oil Co. v. Culberson, 100 Texas, 462; Buckler v. Turbeville, 17 Texas Civ. App., 120; 15 Cyc., 394-404; Gibson v. Templeton, 62 Texas, 555; State ex rel. v. Owens, 63 Texas, 269; Sayles' Texas Civ. Prac., 115; Cockrill v. Cox, 65 Texas, 673; Norman v. Thompson, 96 Texas, 253; Hickman v. State, 28 S. W., 687; Compton v. Holmes, 94 Texas, 578.

Various cross-assignments are grouped by appellees and the contention is made thereunder that the trial court erred in refusing to permit contestees to file an amended answer during the progress of the trial, setting up additional alleged illegal votes. The trial begun on November 18, and was continued during the week and was then adjourned to December 9, on which day contestees filed a motion to amend their answer, naming other parties, and alleging the casting and counting of unnumbered "pro" ballots. The motion was denied and the amendment was rejected as coming too late. This matter presents no reversible error. It is within the sound discretion of the trial court to decline to permit amendments to the pleadings after an announcement of ready for trial and during its progress, and unless an abuse of such discretion is shown his ruling will not be revised.

(Rev. Stat., art. 1188; Colorado Canal Co. v. McFarland, 94 S. W., 400; Texas & N. O. Ry. Co. v. Goldberg, 68 Texas, 687; Western U. Tel. Co. v. Bowen, 84 Texas, 477; Greeley v. Carter, 30 S. W., 487; Gulf, C. & S. F. Ry. Co. v. Butler, 34 S. W., 757; Walker v. Hernandez, 42 Texas Civ. App., 543.) The record does not show any abuse of discretion. There being no pleading on the part of contestees that unnumbered ballots had been cast and counted for prohibition, the court did not err in excluding testimony tending to prove that fact. The testimony was not admissible under the general denial filed by appellees.

We can not consider the ninth cross-assignment because it is too general and involves several distinct separate propositions and is not followed by appropriate propositions with statements from the record supporting the same.

It was alleged by appellants in their pleading that each contestant was a resident citizen and property owner and qualified voter of Navarro County. No proof on this was offered upon the trial and appellees contend that the appellants having failed to prove these allegations the court erred in finding that forty-one illegal votes had been cast and counted against prohibition. We do not concur in this contention. Contestees did not plead in abatement as to the capacity of plaintiffs to maintain the suit. Nor was it alleged by them that contestants were not resident citizens and qualified voters of Navarro County. The matter does not seem to have been called to the attention of the court or any question raised during the trial as to appellees' right to maintain the suit. We are of the opinion that the right of appellants to maintain the suit was waived by appellee. (Rev. Stats., arts. 1265 and 1269; Crouch v. Posey, 69 S. W., 1001; St. Louis S. W. Ry. Co. v. Parks, 40 Texas Civ. App., 480; Chicago, R. I. & G. Ry. Co. v. Seale, 89 S. W., 997; Willis v. Smith, 17 Texas Civ. App., 554; Young v. Meredith, 38 Texas Civ. App., 59.)

The contestants alleged in their petition that Corsicana was a city of more than 10,000 inhabitants; that the Legislature of the State ascertained and so found, and in 1903 granted it a special charter as is manifest by special laws of the Twenty-eighth Legislature, Special Laws, chapter 28, page 171. They further alleged that persons exempt from payment of poll tax residing in said city who had failed to procure exemption certificates had voted against prohibition and that their votes were illegal by reason of their having failed to procure such certificates. The contestees specially excepted to these allegations on the ground that the special charter was void for the reason the existing corporation had not been dissolved. As we understand the contention, it is that the number of inhabitants of a city is to be ascertained and determined by the last United States census, and that the census for 1900 shows Corsicana to contain less than 10,000 inhabitants. Section 19 of the Election Law relating to the procurement of exemption certificates by persons exempt from the payment of a poll tax who resides in a city of 10,000 inhabitants or more, contains no provision as to how the number of inhabitants is to be ascertained. The Legislature having granted the city a special charter,

which it could not do under the Constitution of the State if the city does ·not contain more than 10,000 inhabitants, must have ascertained and determined the population to be more than 10,000 before granting the charter. (Const., art. 11, secs. 4 and 5; Acts 28 Leg. (1903), Sp. Laws, chap. 28, p. 171; State v. Larkin, 90 S. W., 916; Rev. Stats., art. 581; Foster v. Hare, 26 Texas Civ. App., 177; State v. Goodwin, 69 Texas, 55; Ewing v. State, 81 Texas, 178; Word v. Schow, 29 Texas Civ. App., 120; Muller v. Denison, 1 Texas Civ. App., 296.)

Section 113 of the Election Law does provide in substance that no one shall vote in a primary election unless he has paid his poll tax or obtained his exemption certificate; provided that the requirements as to presentation of a poll tax receipt, certificate of exemption or affidavit shall apply only to cities of 10,000 population or more as shown by the last United States census. This section seems to apply only to primary elections, and does not attempt to prescribe how the question of population is to be ascertained in procuring the certificate of exemption as required by section 19 of the statute. However, this ruling of the court is harmless so far as contestees are concerned in view of the court's holding sustaining their exception that this requirement of the law was unconstitutional and that the failure of the voter to procure such certificate did not affect his right to vote.

L. M. Coates and E. P. Wallace resided in Corsicana. They did not in person pay their poll tax, and did not get a poll tax receipt. The court properly held them to be illegal voters. J. F. Russell was not a legal voter and the court did not err in so holding. He lived in Corsicana, and although subject to poll tax had not paid the same. Pleas Buttrell lived in Corsicana and had not paid a poll tax to the city. He was not shown to be over sixty years of age. The court properly held him to be an illegal voter. There was no error in holding Cap Dawson an illegal voter. He lived in Corsicana and had not paid his city poll tax. Louis Hashop voted at ward 4 in Corsicana against prohibition. The court held him to be an illegal voter because he was a subject of the Kingdom of Greece and had not declared his intention to become an American citizen. The record fails to support this finding. The court erred in holding the vote illegal and deducting it from the anti-prohibition votes at said box. J. H. Williams lived in Blooming Grove and voted there. He had not paid his poll tax to that city and the trial court properly held his vote illegal.

· The appellees cross-assign error to the holding that Johnnie Cook, Ed Ewing, W. L. Green, Henry Hicks, J. W. Higgins, Guy Millorn, Lewis Pevehouse, Sanford Scroggins, Owen Sheppard and Jim Wilhelm were illegal voters and deducting their votes from the total number of votes cast against prohibition. These voters did not vote in the precinct of their residence. This is a Constitution requirement and can not be ignored. (Const., art. 6, sec. 2; Gen. Laws of 1905, secs. 7 and 10, p. 522; Cooley's Const. Lim. (7th ed.), 754; Roper v. Scurlock, 29 Texas Civ. App., 464.) The fact that the voter believed that he lived in a different precinct did not justify his voting there. G. R. Rakeshaw did not vote in the precinct of his residence and his vote was illegal.

E. L. Guthrie was a legal voter and voted for prohibition at ward 3, Corsicana. The court properly held this vote legal.

There was no pleading by contestees that B. A. Crofford, who voted for prohibition in Corsicana, had failed to pay his poll tax to that city. It was alleged by contestees that Crofford resided in Blooming Grove and had failed to pay his poll tax to that city. The court held that there being no pleading that he had failed to pay his poll tax to the city of Corsicana, that his vote was properly counted. The holding was proper. The evidence must correspond with the allegations.

The five majority given by the court to the contestees should be reduced to four by reason of the court's error in holding that there had been a gain by the antis of three votes at the Kerens box, instead of two as found by this court.

We conclude that the following votes cast against prohibition were illegal and should not have been counted: J. C. Crouch, J. C. Tipton, J. C. Garner, W. B. Bradle, W. Powell, G. F. Oliver, J. D. Pilkington, A. M. Milligan, J. M. Humphries, S. E. Ross, John Wooland, M. Thummell. That the court should have counted the vote of J. D. Bourland in favor of prohibition. That Louis Hashop was not shown to be an illegal voter and his vote should have been counted against prohibition. This makes twelve illegal votes cast against prohibition and which were improperly counted by the trial court. To these should be added the J. D. Bourland vote improperly struck out by the court, and the two votes in favor of prohibition at Frost not counted by the trial court, and two at ward 3, Corsicana, in favor of prohibition not counted by the court, and one vote at ward 1, making a total gain by contestants of eighteen votes, from which should be deducted the Louis Hashop vote, leaving a net gain of seventeen votes in favor of prohibition. The trial court found in favor of contestees by five majority, which we hold should have been four, and deducting these four votes from the seventeen votes above set out, leaves a majority of thirteen votes in favor of prohibition. It follows that the court erred in rendering judgment in favor of contestees and against contestants.

The judgment will be reversed, and it appearing that the election held in Navarro County on June 15, 1907, resulted in a majority of thirteen votes in favor of prohibition, judgment will be here rendered in favor of contestants, and such judgment will be certified to the Commissioners' Court of Navarro County.

*Reversed and rendered.*

### OPINION ON REHEARING.

Appellees in their motion for rehearing contend that this court erred in setting aside the finding of the trial court that Henderson Taylor was sixty years of age on January 1, 1906, and not required to pay a poll tax and in holding his vote illegal and deducting it from the votes cast at the Chatfield box against prohibition. The evidence as to the age of this voter was conflicting. The preponderance of the testimony is to the effect that he was not sixty years of age

on January 1, 1906. There is evidence, however, to the effect that he was past sixty. We can not say that it is manifest that the great weight and preponderance of evidence was against the finding of the trial court. We were in error in setting aside the finding of the trial court, and holding this vote illegal, and in deducting this· vote from the votes cast against prohibition.

The motion for rehearing calls our attention to the fact that F. M. Humphries, who voted at the Tupelo box, voted *for* prohibition, and not *against,* as stated in the opinion. The trial court held his vote illegal by reason of his not having paid his poll tax. Such was the holding of this court. But we inadvertently stated that he voted against prohibition instead of for prohibition. The opinion is corrected in respect to the votes of said Humphries and Henderson Taylor, which reduces the majority in favor of prohibition from thirteen· votes to eleven votes.

The contention is made that this court has not the power of jurisdiction to reverse the judgment of the trial court and render judgment for the appellees. It is insisted that a local option contest is a proceeding under a special statute and that the courts have no power or jurisdiction to render any judgment except as expressly provided by the statute. Article 3397 of Sayles' Civil Statutes, which authorizes the contest, provides: "And should it appear from the evidence that the election was illegally or fraudulently conducted; or that by the action or want of action on the part of the officers to whom was entrusted the control of such election, such a number of legal voters were denied the privilege of voting as, had they been allowed to vote, might have materially changed the result; or if it appears from the evidence that such irregularities existed as to render the true result of the election impossible to be arrived at, or very doubtful of ascertaining, the court shall adjudge such election to be void, and shall order the proper officer to order another election to be held, and shall cause a certified copy of such judgment and order of the court to be delivered to such officer upon whom .is devolved by law the duty of ordering such election." This article was amended by the Thirtieth Legislature and .the courts given "jurisdiction to try and determine all matters connected with said election, including the petition of such election and all proceedings and orders relating thereto, embracing final count and declaration and publication of the result putting local option into effect, and it shall have authority to determine questions relating to the legality and validity of said election, and to determine whether by the action or want of action on the part of the officers to whom was entrusted the control of such election, such a number of legal voters were denied the privilege of voting as, had they been allowed to vote, might have materially changed the result, and if it shall appear from the evidence that such irregularities existed in bringing about said election or in holding same as to render the true result of the election impossible to be arrived at, or very doubtful of ascertaining, the court shall adjudge such election to be void, and shall order the proper officer to order another election to be held, and shall cause a certified copy of such judgment and order of the court

to be delivered to such officer upon whom is devolved by law the duty of ordering such election." Gen. Laws of 1907, p. 447.

The writer has grave doubts whether under the statute as amended, this court is authorized to subtract illegal votes and add legal ones, and after a full investigation render judgment for the party found to have received the greatest number of legal votes. No such authority is expressly conferred by the statute under which the contest is authorized. In the trial of contested election cases between parties contesting for an office it is expressly provided in Revised Statutes, art. 1804e, that "if upon the trial of any contested election case any vote or votes be found to be illegal or fraudulent, the court trying the same shall subtract such vote or votes from the poll of the candidate who receives the same, and after a full and fair investigation of the evidence shall decide to which of the contesting parties the office belongs."

We find that no such irregularities exist in the election as to render the true result impossible to be arrived at, or very doubtful of ascertaining. The other members of the court have no such doubts as to the power of this court to render such judgment as was rendered by us in this case. The motion for rehearing is overruled.

*Overruled.*

Application for writ of error dismissed for want of jurisdiction.