## W. E. Truesdell et al. v. E. R. Bryan et al.

Decided November 17, 1900.

**1. Contested Election—Local Option—Legal Votes Excluded.**

Where, in a contest of a local option election, it is shown that legal voters, sufficient in number to have changed the result had they voted with the contestants, were denied their right to vote, but it is also shown that, had the rejected votes been received and counted as the parties intended and offered to cast them, the result of the election would not have been different, no sufficient ground is shown for declaring the election invalid. Revised Statutes, articles 3397, 1804f, 1804t, construed.

**2.  Same—Secrecy of Ballot—Intention of Voter.**

In determining the validity of an election it is not a violation of the law of the secret ballot for the court to inquire of qualified electors, who offered to vote but were denied their right to do so, how they would have voted.

APPEAL from Midland.  Tried below before Hon. W. R. SMITH.

*Finley, Harris, Etheridge & Knight* and *W. W. Martin*, for appellants.

*Hawkins & Camp* and *W. K. Homan*, for appellees.

STEPHENS, ASSOCIATE JUSTICE.—This suit was instituted by appellants to contest the validity of a local option election held January 18, 1900, in precinct No. 1 of Midland County, Texas, to determine whether the sale of intoxicating liquors should be prohibited within said precinct, the election having resulted in the adoption of the law by a majority of eleven votes, as officially declared.

The main ground of contest was, that qualified electors sufficient in number to have changed the result were denied the privilege of voting. This issue was thus disposed of by the district judge in his fifth conclusion of law:

"5.   I find that at said election 122 legal votes were cast and counted for prohibition, and 110 legal votes against prohibition.  Had the votes of all the legal voters who offered to vote at said election been received and counted, there would have been 135 votes for prohibition and 119 votes against prohibition, not counting or estimating the votes of the six voters whose intended way of voting had not been disclosed by the evidence, but had they been received and counted against prohibition, there would still have been a majority of ten votes for prohibition, so it can not be said that such a number of legal voters were denied the privilege of voting as, had they been allowed to vote, the result of the election would or might have been materially changed."

This conclusion involves a construction of that clause of article 3397 of the Revised Statutes which makes it the duty of the court in which the validity of a local option election is contested to declare the election void, where "such a number of legal voters were denied the privilege of voting as, had they been allowed to vote, might have materially changed the result."   The contention of appellants is that the language quoted means that if those denied the privilege of voting were equal to or exceeded in number the majority by which the election was carried, the election should be set aside, since, without considering how they would have voted, they "might have materially changed the result," had they been permitted to vote.   On the other hand, appellees contend that, if it appears from the evidence—showing the number of wrongfully rejected votes and how they would have been cast—that the result of the election would have been the same if they had been cast as the voters offered to cast them, it was not the purpose of the Legislature to have the election set aside, since it can not be said in such case that "such a number of

legal voters were denied the privilege of voting as, had they been allowed to vote, might have materially changed the result."

The question at issue then is, was it the purpose of the Legislature in adopting the Revised Statutes of 1895 (including article 3397) to exclude the inquiry, where a local option election is contested upon the ground that legal voters were denied the privilege of voting, as to how those denied the privilege of voting would have voted? Unless the language of the article quoted admits of no other construction, it ought not to be held that the Legislature intended, contrary to the prevailing rule and practice both in contested election proceedings and in judicial proceedings generally, to have an election declared void upon immaterial grounds, that is, for errors or irregularities not materially affecting the result. This statement has reference, of course, to the case before us of a contest upon the ground that legal voters were denied the privilege of voting, and not to those cases in which the election itself is illegal for want of conformity to mandatory statutes.

By the Act of 1895, passed before the adoption of the Revised Statutes, legal and adequate provision was for the first time made, as held by our Supreme Court, for contesting elections. Acts 1895, p. 58. Section 18 of this act is found in article 1804f of the Revised Statutes, and contains language substantially the same as that quoted above from article 3397, except that "would" takes the place of "might." This verbal difference in the two articles of the Revised Statutes is doubtless due to the fact that the original acts were passed at different times and by different Legislatures, and it will be noted that when the Act of 1895 was passed the previous act, embodied in article 3397, was a dead letter, and would still be without force but for the provisions of the chapter in which article 1804f is found. The language of that article is so extended by section 32 of the Act of 1895 (article 1804t) as to cover this case, and there is plausibility in the contention that, as the chapter in which it appears covers the whole ground of contested elections, without any exceptions, and section 34 of the original Act of 1895 repeals all laws in conflict with that act, article 3397 stands repealed; but as both articles were adopted at the same time as different parts of the Revised Statutes we should perhaps treat them as existing laws. So treating them, we can see no good reason why the Legislature should have intended that a local option election should be declared void upon an immaterial ground, and that every other election should be upheld where the irregularity complained of does not materially affect the result, and are of the opinion that there is little or no substantial difference between the two articles upon the point at issue in this case. Possibly article 1804f imposes a greater burden in making out a prima facie case on contestants than the other article, but when the matter involved in the contest is fully developed in the evidence the difference is more apparent than real, for when it is shown that the result "would" have been the same, it can not be said that it "might" have been different.

The objections, that the inquiry as to how the voter would have voted involves the holding of another election by the court, and that such

procedure violates the law of the secret ballot, we dispose of as follows: They would apply with equal force to all proceedings to contest elections, and hence do not aid in giving to article 3397 a construction materially different from what· is clearly expressed in article 1804f. But in our opinion they do not stand in the way of any such contests. After the election is held and the result declared, the judicial inquiry objected to is merely for the purpose of testing the materiality of the grounds of contest in determining the validity of the election. The excluded votes are not counted as votes for either side or party, but if it is found that the result would have been materially different if the votes had been cast as the voters intended to cast them, a new election will be ordered. Rathgen v. French, 22 Texas Civ. App., 439. The secrecy of the ballot, while an important consideration, is not paramount when the result of the election is made the subject of contest. Many things which ought to be kept secret are required to be disclosed in a judicial inquiry. Nor is there any difficulty in making the proof as to how a voter who has been denied the privilege of voting would have voted. When he goes to the polls and, with his ticket made out, offers to vote, he certainly knows as well how he intends to vote as that he intends to vote at all.

In conclusion, while the literal reading of article 3397 sustains appellants' contention, and has given us no little trouble in reaching a satisfactory conclusion in this case, we are of opinion, for the reasons above given, that the conclusions of the trial court should be adopted and the judgment affirmed.

*Affirmed.*