## Z. Z. Savage et al. v. Hugh L. Umphres et al.
## R. E. Underwood v. Z. Z. Savage et al.

### Decided June 25, 1910.

**1.—Local Option Election—Contest—Disqualification of Judge—Exchange of Districts.**

Upon a certification by a district judge of his disqualification to try a contested local option election case in his district, any other district judge in the State may, upon an exchange of districts, try the case. In the matter of disqualification of district judges, neither the Constitution nor the statutes make any distinction between contested local option elections and ordinary suits or cases.

**2.—Same—Official Contestee—Death of County Attorney.**

In a proceeding to contest a local option election, the statute prescribes that the county attorney of the county shall be named as the contestee; the proceeding is against the officer and not against the individual incumbent; hence, upon retirement of the individual holding the office of county attorney at the time the proceeding was instituted, his successor in office may properly make himself or be made the contestee in the proceeding.

**3.—Same—Abatement—Practice.**

After a contest of a local option election has once been tried, appealed and reversed, it is too late for the contestee for the first time to raise the question of the sufficiency of the citation or notice served upon him.

**4.—Trial Without Jury—Findings of Fact—Omission of Material Fact—Practice.**

When a case is tried without a jury and the trial judge at the request of the appellant has filed his conclusions of fact, the appellant can not complain on appeal of the omission of the judge to find a material fact when the attention of the judge was not called to the omission and no request was made for a finding upon such issue.

**5.—Contested Election—Local Option—Qualification of Contestant.**

The statute regulating a contest of a local option election provides that the contestant or contestants must be qualified voters of the county in which

Vol. LXII Civil—14.

the election took place. Held, any question as to the qualification of the contestants in said respect must be raised by plea in abatement.

#### 6.—Same—Irregularities—New Election.

Evidence of irregularities in the conduct of a local option election considered, and held not only sufficient to justify the trial court in setting aside the declared result of the election, but to require that such judgment be entered. The true result of an election can not always be ascertained by the addition of some votes and the subtraction of others, as the evidence might warrant; and when it is doubtful if the true result can be so arrived at, a new election should be ordered.

Appeal from the District Court of Potter County. Tried below before Hon. D. B. Hill, Judge of the Sixty-ninth Judicial District.

*Madden, Trulove & Kimbrough,* for appellant Underwood.—J. N. Browning, Judge of the Forty-seventh Judicial District of Texas, in which Potter County is situated, is and was the only legally competent judge to sit in trial and to render judgment in the contest, and was in nowise disqualified from sitting and entering judgment upon such trial. Constitution, article V, section 11; Rev. Stats., arts. 1068 and 1797.

The contest of election originally instituted by Z. Z. Savage and J. N. Bozeman against Hugh L. Umphres, who was then county attorney of Potter County, Texas, and which had been tried and judgment rendered in favor of contestee, and from which judgment appeal had been taken so that the same was pending before the Court of Appeals in November, 1908, when Hugh L. Umphres ceased to be county attorney of Potter County and R. E. Underwood succeeded him as the duly elected, qualified and acting county attorney of Potter County, Texas, abated by the retirement of Hugh L. Umphres, contestee, from said office, and his being succeeded in office by reason of R. E. Underwood being regularly elected and qualified to that office. The Secretary v. McGarrahan, 9 Wallace, 298, 315; U. S. v. Boutwell, 17 Wallace, 604; U. S. v. Chandler, 122 U. S., 643; U. S. v. Lochren, 164 U. S., 701; Warner Valley Stock Company v. Smith, 165 U. S., 28, 31; U. S. v. Butterworth, 169 U. S., 600, 602; Lansing & Co. v. Hesing, 81 Federal Reporter, 242.

The provisions of the Terrell election law with reference to the congregation of crowds around or near voting places are so far directory only as that a violation thereof could not be cause for declaring the election void in the absence of an allegation showing some fraud or changes in the result of the election by reason thereof. Hunnicutt v. State, 75 Texas, 234.

A ballot unambiguous upon its face and positively identified by number and name according to the records of the election held, is the best evidence as to how a voter voted at the election, and parol testimony is not admissible to show that such voter voted, or intended to vote, differently from that shown by the ballot cast. Davis v. State, 12 S. W., 957; Coughlin v. McElroy, 72 Conn., 99, 77 Am. St. Rep., 301; Rutledge v. Crawford, 91 Cal., 526, 25 Am. St. Rep., 212.

To entitle one to institute and maintain a contest to contest the re-

sult of an election held to determine whether or not intoxicating liquors shall be sold in any county, the contestant must allege and prove that he is a qualified voter residing within the county or territory where such election had been held. Chapter 8, Laws of 1907, page 447, and amended article 3397 of the Revised Statutes; Harding v. Commissioners Court, 95 Texas, 174-175; Minor v. Kidder, 43 Cal., 229, 18 Century Digest, c441, (f), (i), (h), and 440c, 7 Enc. of Pleading & Practice, 380-381 with notes, 18 Cen. Digest, c474; Payne on the Law of Elections, secs. 818 and 820.

*Geo. C. Clough* and *Reeder & Graham,* for Z. Z. Savage et al.

SPEER, ASSOCIATE JUSTICE.—This is a contest of a local option election held in Potter County on December 3, 1907, to determine whether or not intoxicating liquors should thereafter be sold within said county. A former appeal will be found reported in 118 S. W., page 893, where the facts are set out at great length and where many of the questions of law presented on this appeal are fully discussed by Justice Neill of the Court of Civil Appeals for the Fourth District. On the last trial, which was had before Honorable D. B. Hill, Judge of the Sixty-ninth Judicial District, sitting in place of Judge J. N. Browning, who had certified his disqualification to the Governor, a judgment was entered holding the election void for irregularities and uncertainties and ordering a new election to be held. Both contestants and contestees have appealed and by agreement these appeals have been consolidated and will be disposed of as one case. There are some preliminary questions that need first to be discussed before entering upon a consideration of the merits of the appeal.

It is insisted by contestee that Judge Hill had no authority to preside upon the trial of this contest and erred in refusing to vacate the bench on motion of contestee, the argument being that, since a contest of an election is not a case or cause within the meaning of the statute disqualifying district judges, there exists no statute disqualifying a district judge for interest or otherwise to try a contested election proceeding, and that, therefore, Judge Browning, whose district embraces Potter County, alone was authorized under the law to hear and determine the contest, notwithstanding the facts exist which would disqualify him, if this were an ordinary case.

Article 1797, Sayles' Texas Civil Statutes, provides: "Contested elections for other purposes than the election of officers shall be tried by the District Court in the county where the election was held or either of them, if there is more than one such court." And article 3397, as amended May 14, 1907 (Acts 1907, page 447), provides for the contest of such "election in the District Court of the county in which such election has been held, which shall have original and exclusive jurisdiction of all suits to contest such election," etc. It will be thus seen that the jurisdiction to hear and determine such contest is conferred upon the District Court and not specially upon the individual judge of that

court. Now, the case was tried in the District Court of Potter County wherein the election was held, even though that court was presided over by Judge Hill upon an exchange of districts, as provided by statute. Sayles' Texas Civil Statutes, article 1069. Article V, section 11, of the Constitution, itself declares: "And the district judges may exchange districts or hold courts for each other when they may deem it expedient, and shall do so when required by law." In view of these constitutional and statutory provisions, we do not think the right of Judge Hill to hear and determine this contest can at all be called in question. See generally, Kruegal v. Nash, 72 S. W., 601.

It is next urged by contestee that this contest abated upon the retirement of Hugh L. Umphres as county attorney and the qualification of this contestee as his successor, contestee having been elected at the November election in 1908; and here again the argument is that the action or proceeding is against the officer and not against the office of county attorney and that, therefore, upon the retirement from office of the original contestee, the proceeding abated. But we take a contrary view of. the nature of the proceeding as it affects the county attorney. Article 1804u, Sayles' Texas Civil Statutes, designating the person who is to be named as contestee in such a proceeding, is as follows: "In any case provided for in the preceding article, the county attorney of the county . . . shall be made the contestee and shall be served with the notice and statement, and shall file his reply thereto as in the case of contest for office; but in no case shall the costs of such contest be adjudged against such contestee, or against the county, city, town. or village which they may represent, nor shall such contestee be required to give any bond upon appeal." It is thus apparent that a county attorney, who can not possibly have any more individual interest in the result than any other citizen, is named as the proper contestee merely because he is the chief legal officer of the county; and as evidencing the fact that he is named in that capacity, rather than as an individual, witness the provisions last quoted exempting him from the payment of costs and the necessity of giving a bond upon an appeal.

A line of cases is to be found indicating that a proceeding against an officer will abate upon his death, resignation or removal from office; as, for instance, where it is sought by mandamus to compel an officer to perform some duty, and such, for the most part, are the cases cited by contestee, notably the case of Warner Valley Stock Company v. Hoke Smith (U. S.), 41 L. Ed., 621. In such a case the proceeding is of course against the recalcitrant officer and is personal in its nature and in no just sense can be said to be directed against the office; while here the incumbent of the county attorney's office is formally made contestee, not because of any dereliction due on his part, but because he is such officer. In such case we think the cause was rightly conducted with this contestee as substitute for his predecessor, Hugh L. Umphres; and furthermore, we think it was too late for him to raise any question of the sufficiency of the citation or notice to him, especially since the case

has been once before tried, appealed and reversed, since he became county attorney.

There is yet another question presented by contestee which demands consideration at this point. Under the law (amended article 3397, *supra*) the right to contest an election such as this, is given to "any qualified voter of the county in which such election has been held." And the point is now made that there was no evidence offered whatever upon the trial of this contest to show that contestants Savage and Bozeman were qualified voters residing in Potter County at the time of such election or contest. But we do not think this question is presented in such a way as to demand consideration at our hands. The trial judge made elaborate findings of fact, though he did not make a finding upon this particular question, but his failure in this respect was not called to his attention by contestee by a request for a finding, nor in any other manner. In such a case it seems an appellant can not take advantage of such omission to have a case reversed. He should have requested a finding, if in his judgment the court had failed to find on some material issue. Lanier v. Foust, 81 Texas, 186; Tenzler v. Tyrrell, 32 Texas Civ. App., 443 (75 S. W., 57). In the case first cited our Supreme Court say: "It is not error for the court to fail to find upon a material issue in the case in the absence of a special request for such finding." Besides, the precise question appears to have arisen in McCormick v. Jester, 53 Texas Civ. App., 306 (115 S. W., 278), and it was there decided that since the contestees did not plead in abatement as to the capacity of plaintiffs to maintain the suit, they waived their right to object on that score. If the question were an open one and properly before us, we might take a different view of the matter and hold that it is not a question of capacity at all, but an essential part of the contestants' right of action; but for the reason already given this is so much by the way.

This brings us to the findings made by the trial court. These findings are lengthy and in many instances refer to the qualification or disqualification of individual voters, but in the view we take of the case only a portion of such findings, or the court's rulings affecting them, needs to be considered. We quote the following findings of fact as being pertinent to the disposition we make of the appeal:

"6. I find that in voting precinct No. 5, B. T. Ware was a presiding judge of elections and that he numbered the ballots, and received the ballots back from the voter, and deposited the same in the box; and that he assisted in challenging votes and determining whether persons were qualified to vote in said election, and assisted in the counting of the votes and in making out the returns, and that he administered the oath to his fellow officers of election; and I find that at said time the said B. T. Ware was a school trustee of the Amarillo Independent School District, which included the city of Amarillo and the territory of voting precinct No. 5, at which he presided.

"7. I find that in voting precinct No. 3, F. M. Hill was presiding judge of elections, and that he numbered and endorsed the ballots, and

received the ballots from the voters, and deposited the same in the boxes; that he administered the oath to his fellow officers, and that he delivered all boxes used in said election to the county clerk, and I find that at said time the said F. M. Hill was a school trustee in school district No. 2, embracing all boundaries of voting precinct No. 3.

"8. I find that in voting precincts Nos. 1 and 5 large numbers of persons were permitted by the election officers to congregate inside of the 100-foot limit prohibited by law; that both elections for precincts 1 and 5 were held within 100 feet of each other; that in each of said voting precincts and boxes challengers for the prohibitionists and anti-prohibitionists, were, by mutual agreement and with the consent of the officers of election, permitted to remain within a very few feet of the voting boxes, and to challenge voters as they saw fit, and that they assisted the judges of the election in determining whether or not a person was a qualified voter. That on election day, and about 4:30 p. m., one E. C. Jeffries was arrested at the instance of parties of the prohibition campaign committee, and carried through the court house and past that voting box, followed by quite a crowd into the office of the sheriff, about thirty feet from the two polling places, and I find that the law prohibiting persons from being or remaining near the polls, was ignored by the officers of election in voting precincts Nos. 1 and 5, to the extent, and as above stated.

"9. I find that in voting precinct No. 1, two blank ballots were found by the Commissioners' Court folded inside of other tickets; all four tickets reading 'For Prohibition'; that the outside tickets were numbered, and the inside were unnumbered, and I find that the Commissioners' Court counted two of said tickets 'For Prohibition.'

"10. I find that in voting precinct No. 3, one ballot was found in the ballot box which contained no number, but that the same read 'For Prohibition,' and was so counted by the County Commissioners' Court.

"11. I find that in voting precinct No. 5, J. N. Browning voted 'For Prohibition,' and I find that the ticket in the box accredited to him reads 'Against Prohibition.' I also find that in this voting precinct, S. P. McKinney voted 'Against Prohibition,' A. T. Zion voted 'Against Prohibition,' B. F. Merrett voted 'Against Prohibition,' but the tickets in the box of their numbers and accredited to them, read 'For Prohibition,' and were so counted and considered by the Commissioners' Court.

"12. I find that in voting precinct No. 1, E. D. Green voted 'Against Prohibition,' but that his ticket was innocently but erroneously counted by the Commissioners' Court as 'For Prohibition'; and I find that in said voting precinct No. 1, J. E. Gorman voted 'Against Prohibition,' but ticket No. 236 accredited to him reads 'For Prohibition,' and it was so counted by the Commissioners' Court."

"41. I find that D. E. Norris voted 'Against Prohibition' in precinct No. 1, and find that no ticket was in the box to correspond with his vote, and that his name was not on the poll list."

"49. I find that C. B. Reeder voted ticket 81, 'Against Prohibition,' but through some error the Commissioners' Court in counting this vote, it counted 'For Prohibition' and it was so estimated in the majority as found by the Commissioners' Court."

"54. I find that during the holding of the election, and at or near the voting booths in precincts Nos. 1 and 5 which were close together, one E. C. Jeffries was arrested, charged with illegal voting, about 4:30 p. m. on election day, and brought to and through the courthouse and past the voting booths; and that when brought to the courthouse the officers and clerks in voting precinct No. 5 left the front room where the ballot box was situated, and went into the back room and looked out and away from the box, where the prisoner was in charge of the officers, and I find that this box might have been left unguarded several minutes; that persons were allowed within a few feet of this box, who were unauthorized to be there by law, and that it is in this box that the discrepancies between the votes as cast and the votes as found in the box, exists.

"55. I find that several Mexican voters had prepared to vote in this election, and would have so voted; but they were deterred from doing so by reason of a circular scattered about by the prohibitionists, offering a reward for illegal voting, and by the arrest of the said E. C. Jeffries; and that in consequence thereof, the said Mexicans did not vote or offer to vote in the election; that there were 5 in number, and had they voted they would have cast ballots 'Against Prohibition.'

"56. I find that the law with reference to requiring maiden voters to procure a certificate of exemption from the tax collector in accordance with section 23 of the Terrell Election Law, was entirely disregarded by the officers entrusted with the duty of holding the election.

"57. I find that the law with reference to requiring proof of payment of city poll taxes, to the city of Amarillo, was generally disregarded in voting precincts 1 and 5 as to those voters who resided in the city of Amarillo.

"58. I find that on and prior to January 1, 1906, the city of Amarillo was incorporated; that the same lies within Potter County, Texas, and that prior to and on January 1, 1906, said city had by ordinance levied a poll tax of $1.00 upon all male persons residing therein between the age of 21 and 60 and not otherwise exempt.

"59. I find that the tax collectors' records of the city of Amarillo, produced in evidence for the purpose of showing who had and who had not paid city poll taxes for the year 1906, are inaccurate; that the tax collectors admitted their inaccuracy in several instances, and with reference to a number of payments; that important records were not produced though admitted on hand; that the stubs of the receipt books were not produced or checked or examined; that the tax rolls testified from had been out of the possession of the collector and in the hands of parties assisting the side which offered them, and the same had not been rechecked by him, and I am unable to determine from the rolls produced whether the voters challenged for non-payment had or had not paid the same to the

city of Amarillo for the year 1906 prior to February 1, 1907, or at any other time. The stubs to the poll tax receipt books I consider the best evidence, and these were not produced though admitted on hand in the office of the city collector.

"60. I find that J. N. Browning voted in said election, according to the poll list, ticket No. 127, precinct No. 5, and that he voted 'For Prohibition' but I find that the ballot No. 127, as the same appears in the box accredited to him, reads 'Against Prohibition.' "

Most of the other ninety-five findings of fact were made with reference to individual votes or voters, and in the court's conclusions of law he sustained thirty-four of contestant's challenges, and thirteen of the contestee's, resulting in a small majority against prohibition, but the court further concludes upon the whole case that these discrepancies "constitute the gravest illegality and irregularity in the conducting of this election and that the election should be set aside and declared void," and specially does he find: "In summing up the result of the votes challenged, after deducting from the total vote cast the votes found to have been illegally, or by persons not entitled to cast a ballot in this election, I find the net result to be so close that I do not feel warranted in deciding the result of this election on the votes found to have been legally cast; and I find that such irregularities existed in holding the election, in the manner in which it was conducted, in receiving and counting the ballots, as to leave the true and correct result to be almost impossible to be arrived at, uncertain and exceedingly difficult of ascertaining; and in view of the additional fact that in voting precincts Nos. 3 and 5 the presiding officers of election, who numbered and deposited the ballots, and who administered the necessary oaths, were both school trustees in the county of Potter, and within their voting precincts, which appears to be forbidden by a mandatory statute, and in view of all the facts and circumstances of the case, I am of the opinion that the proper conclusion to be arrived at is that the election is void for illegality, irregularity and uncertainty of result, and it is so adjudged."

We adopt the trial court's findings above set out and those not set out in so far as they affect the legal conclusions above announced. While some of these findings are attacked by the contestants and others by the contestee, still we overrule such objections without finding it necessary to discuss them. The evidence abundantly authorized the findings.

The only question remaining is: Was the court authorized under the circumstances to declare the election void and to refuse to declare the result either way? We think that he was not only authorized to do so, but that his action under the facts was eminently proper. Article 3397 of the statutes cited above declares: "If it shall appear from the evidence that such irregularities existed in bringing about said election or in holding same as to render the true result of the election impossible to be arrived at or very doubtful of ascertaining, the court shall adjudge such election to be void, and shall order the proper officer to

order another election to be held, and shall cause a certified copy of such judgment and ᵇrder of the court to be delivered to such officer upon whom is devolved by law the duty of ordering such election." While it is not impossible, of course, if we look no further than the court's findings as to the irregularity of the votes actually cast, to arrive at the result thus indicated, still it can not be said that this would indicate the true result, as the statute contemplates, for the true result which the law seeks to reach is that result which would have been shown but for the irregularity affecting it. But the statute goes further and declares if the true result is "very doubtful of ascertaining," the court shall adjudge the election to be void. It is apparent from the foregoing findings that any conclusion as to the true result of the local option election in Potter County is certainly very doubtful of ascertaining, and the trial court correctly refused to hazard a guess as to what it should be. The irregularities though flagrant in form were for the most part unintentional and proceeded from motives entirely innocent, in other respects so much can not be said in extenuation. There is room for the conclusion that a number of the ballots on both sides of the issue submitted were interfered with in a manner most reprehensible, not to say criminal, but, be this as it may, the fact nevertheless remains that the true result is so shrouded in mystery and veiled in uncertainty as to render it well nigh impossible to be ascertained.

These views dispose of every material issue raised either by contestants or contestee and result in an affirmance of the judgment. Judgment affirmed.

*Affirmed.*