KEMPEN et al. v. BRUNS, Mayor.
(No. 5889.)

(Court of Civil Appeals of Texas. San Antonio. May 16, 1917.)

1. ELECTIONS ⊙⇒83—QUALIFICATION OF VOTERS—EVIDENCE.

Although the Constitution provides that at elections to determine expenditure of money or assumption of debt by towns and cities only taxpayers can vote, since a taxpayer is defined as a property owner, it is not essential that the property tax be actually paid, nor is the assessment roll the only evidence of the fact of payment.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 77–81.]

2. ELECTIONS ⊙⇒227(1) — VALIDITY—DENIAL OF RIGHT TO VOTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3063, providing what elections shall be declared void, if election officials erroneously require proof that a voter has actually paid his taxes and such ruling materially affects the result, the election must be declared void.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 197, 198.]

3. ELECTIONS ⊙⇒291—CONTESTS—BURDEN OF PROOF.

The burden of proof is upon an election contestant to show that the result was materially affected by an erroneous ruling of election officers.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 286.]

4. ELECTIONS ⊙⇒298(1)—CONTESTS—SCOPE OF INQUIRY.

In determining whether erroneous ruling of judges materially affected result of an election, the court will consider the evidence of how a voter, denied the privilege of casting his ballot, would have voted had he been permitted.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 303, 305.]

5. ELECTIONS ⊙⇒227(1)—CONTESTS—MATERIAL CHANGE.

Refusal to permit a qualified elector to vote, when he would have voted for a proposition which carried, does not materially affect the result of the election.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 197, 198.]

6. ELECTIONS ⊙⇒239 — CONTESTS — COUNTING VOTES.

Though a qualified voter was told by a private individual that the judges would not let him vote, his vote could not be counted, where he did not go to the polls for the purpose of voting.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 218.]

7. ELECTIONS ⊙⇒239 — CONTESTS — COUNTING BALLOTS.

To warrant counting ballot of a qualified voter, denied the privilege of voting, it is not sufficient for him to testify that he thought he would have voted a certain way, but he must testify positively.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 218.]

8. ELECTIONS ⊙⇒224 — CONTESTS — COUNTING BALLOTS.

In a city election involving expenditure of funds, where a voter told the judges that he had no taxable property within the city, it was their duty to refuse his ballot, since it was his duty to show that he was qualified.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 193.]

9. ELECTIONS ⊙⇒295(1) — CONTESTS — COUNTING BALLOTS.

A mere showing that an unnamed and unidentified negro was refused privilege of voting, without showing that he owned taxable property or resided in the town or how he would have voted, does not show error in the exclusion of his ballot.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 297.]

10. ELECTIONS ⊙⇒227(1)—CONTESTS.

Where account of all the ballots illegally excluded showed a prevailing majority of four in favor of the proposition as against a previous majority of six, the election was not void on account of illegal ruling.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 197, 198.]

11. ELECTIONS ⊙⇒228 — CONTESTS—IMPROPER ELECTIONEERING.

In a city election for issuance of bonds, it is not improper electioneering to print upon the notice of election the statement that the city was without funds to build. sewers which the public health required.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 198.]

12. ELECTIONS ⊙⇒285(1)—CONTESTS—PLEADING.

In an election contest, a statement of the result of a previous election was irrelevant and properly stricken from the pleading.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 266–268, 275, 276.]

13. ELECTIONS ⊙⇒227(1) — CONDUCT — HOURS OF VOTING.

Vernon's Sayles' Ann. Civ. St. 1914, art. 786, provides for election of mayor and aldermen. Article 787 requires the polls to be opened at 8 a. m. and closed at 6 p. m. "as to all elections under this title." Section 605 provides for elections upon municipal bonds, but states no time for opening the polls or closing them. Article 2912 provides that in all elections, general, special, or primary, the polls shall be open from 8 a. m. to 7 p. m. *Held* that, an election at which municipal officers were elected and a bond proposition was voted upon, the bond election

was not invalidated by holding the polls open until 7 o'clock; the general statute controlling.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 197, 198.]

14. ELECTIONS ⊚⟿205—CONDUCT—HOURS OF VOTING.

Such statutes are directory.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 182–184.]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

Election contest by George J. Kempen and others against Charles Bruns, as Mayor of Seguin. From a judgment for the contestee, the contestants appeal. Affirmed.

Greenwood & Short, of Seguin, for appellants. P. E. Campbell and Dibrell & Mosheim, all of Seguin, for appellee.

SWEARINGEN, J. Appellants, Geo. J. Kempen, Theo Koch, and F. Klein, by this suit sought to contest an election for the issuance of bonds for sewers, held in Seguin, Guadalupe county, Tex., July 27, 1916, and which resulted in favor of the issuance of bonds. Judgment was rendered by the court in favor of the contestee and against the contestants.

The allegations of the petition and answer and the facts proven will sufficiently appear in our discussion of the various assignments.

The first assignment is that the judgment is contrary to the evidence for numerous reasons, briefly stated, as follows:

The returns of the election showed a majority of six in favor of the issuance of sewer bonds. Five named voters were prevented from casting their ballots through error of the election officers. Two named voters were prevented from going to the polls by report of the erroneous ruling of the election officers. Two or three unnamed, unidentified negroes were prevented from voting, through the erroneous ruling of the election officers. Had these nine or ten voters been permitted to cast their ballots, the result of the election would have been materially changed. It is contended that, these facts being true, the judgment should have declared the election void, instead of carried.

[1] The ruling denounced as error by appellants is that the election officers required as evidence of the qualification of a voter that the assessment rolls should show that the voter had paid his property taxes. This rule, variously expressed by different witnesses, seems to have been adhered to by the election officers in several voting places. The ruling that the assessment roll was the only evidence, or that it must be shown that the voter actually paid the property taxes, was error.

The Constitution does provide that only those, otherwise qualified to vote, who pay taxes on property in towns or cities, are qualified to vote in elections to determine the expenditure of money or assumption of debt by said towns and cities. One who pays taxes has been construed to mean a taxpayer, and it has been determined that a taxpayer, in the meaning of the constitutional provision mentioned, is one who owns property in the town or city subject to taxes. Hillsman v. Faison, 23 Tex. Civ. App. 398, 57 S. W. 920. There is no law making the tax records the exclusive evidence that the voter is a taxpayer. Neither is it necessary that the property tax be actually paid.

[2] Did this erroneous ruling of the election officers materially affect the result of the election? If so, the election must be declared void. V. R. C. S. art. 3063.

[3] The burden of proof is, of course, upon the contestant to prove every allegation tending to show the material effect upon the result of the election of the error complained of. Garcia v. Cleary, 50 Tex. Civ. App. 465, 110 S. W. 176.

[4] Another rule of law that will be relevant in the discussion of this assignment is that the court will consider the evidence of how a voter, denied the privilege of casting his ballot, would have voted had he been permitted. The reason given for this rule, in the excellent work of McCrary on Elections, is:

"This would be held to be the law upon the well-settled principle that the offer to perform an act which depends for its performance upon the action of another person, who wrongfully refuses to act, is equivalent to its performance." McCrary on Elections, (4th Ed.) § 137, p. 104.

The Texas Statute, art. 3063, modifies this general reason somewhat, but the rule as previously stated is sustained by the decisions of the Texas appellate courts. Truesdell v. Bryan, 24 Tex. Civ. App. 386, 60 S. W. 61; McCormick v. Jester, 53 Tex. Civ. App. 306, 115 S. W. 278; Savage v. Umphries, 118 S. W. 909; Savage v. Umphres, 62 Tex. Civ. App. 209, 131 S. W. 291. The opinion by Justice Stephens, in Rathgen v. French, 22 Tex. Civ. App. 439, 55 S. W. 578, is not in conflict with the rule stated, as was made clear by Justice Stephens himself in the opinion in Truesdell v. Bryan, 24 Tex. Civ. App. 386, 60 S. W. 61.

Bearing in mind the foregoing rules of law, we will examine the evidence of unlawful exclusion of qualified voters, to ascertain the material effect, if any, upon the result of the election herein contested.

[5] 1. Henry Aubel was a qualified voter and was unlawfully prevented from casting his ballot. The undisputed testimony showed that he would have voted in favor of the proposition to issue the bonds, for which the election returns showed a majority of six had voted. The rejection of this vote cannot, therefore, be considered as materially changing the result.

[6] 2. Eddie Burns did not do all that was

required of him by the law to have his vote counted, for he did not appear at the voting place at all. His excuse was that Nic Williams told him that the election officers would not allow him to vote. This is not a sufficient reason for counting his ballot as voted. Nic Williams was not an election officer.

[7, 8] 3. R. L. Hellman testified that he thought he would have voted against the bond issue. This is not sufficient; he should have testified that he would have voted against the bond issue. McCormick v. Jester, 53 Tex. Civ. App. 306, 115 S. W. 284. Then, again, Hellman told the election officer he did not have any taxable property in the town of Seguin, upon which testimony they were in duty bound to refuse his offer to vote. It was the voter's duty to furnish the election officers evidence of his qualification; he failed in this duty. The refusal of Hellman's vote cannot be considered.

4. Jerry Johnson testified that he would have voted for the bond issue. Hence the refusal to permit him to vote cannot be considered in the determination of this assignment.

5. W. H. Johnson did not do his full duty, in that he did not go to the voting place and offer to vote. His excuse for failure to do so does not justify a consideration of his pretended vote.

6. August Spahn was a qualified voter and was illegally prevented from voting without fault on his part. He would have voted against the proposition. While this one wrongful act alone will not materially affect the result, yet it must be borne in mind, and if enough others were wrongfully refused the right to vote, who would have voted against the proposition, to overcome or balance the majority for the proposition, the judgment must be reversed.

7. Nic Williams was a qualified voter and was wrongfully denied the right to vote. He would have voted against the proposition. This is the second to be counted in favor of the contestants.

8. The testimony of Le Gette, a presiding judge, reveals the fact that two or three negroes were refused the privilege of voting because they owned no taxable property in Seguin. The contestants entirely failed to prove that these two or three negroes were qualified voters. The refusal of their ballots by the officers was not wrongful.

[9] 9. One unnamed and unidentified negro, who owned a watch, was refused the privilege of casting his ballot; but it is not shown how he would have voted, nor that he was otherwise qualified to vote. For instance, it does not affirmatively appear that this negro had lived in the town a sufficient time or in the district of the voting place, or that he had paid his poll tax. His rejection cannot be counted as error. Hash v. Ely, 100 S. W. 980.

10. The voters, Miles and Brandenberg, were both disqualified; one for, and one against, the proposition. The rejection of their ballots leaves a majority of votes actually and lawfully cast, six in favor of the proposition.

[10] Deducting the two votes that would have been cast against the proposition, had Spahn and Williams been permitted to exercise their constitutional right, there still remains a majority of four in favor of the proposition; from which it is clear that the unlawful rulings of the election officers did not materially change the result of the election. The Marsden-Troy Case, 189 S. W. 960, has no application to the facts of the present case.

This first assignment is overruled, for the reasons above given, which also require us to overrule the second assignment.

[11] The third assignment presents the proposition that it was improper electioneering to print in the notice of election that portion of the order saying that the city was without funds to build sewers which the public health required and in posting said notices near the polling places. We cannot believe that this was fraud or intimidation, or objectionable electioneering. But, if it were subject to such criticism, contestants have failed to prove that one single voter was influenced thereby.

The third assignment is overruled.

[12] There was no error in the order of the court sustaining the exception of contestee to contestants' original petition. The allegation of the result of a previous election was wholly irrelevant and immaterial to the cause on trial. The fourth assignment is overruled.

[13] The fifth assignment alleges that the court erred in striking out paragraph 15 of appellants' petition upon exception. The said excluded paragraph alleged that the polls were closed at 7 p. m. instead of 6 p. m., and that a number of voters voted for the issuance of bonds after 6 p. m. The said paragraph of the petition does not allege that any voters who would have voted against the proposition were in any way prevented from casting their ballots. It will also be noticed that the complaint is that time was extended an hour, not reduced. Moreover, it is a fair inference from the allegation that all the voting places uniformly remained open with due notice to all voters.

We think that article 787, requiring the polls to be closed at 6 p. m., refers only to the election of the mayor and aldermen, etc., mentioned in article 786. We arrive at that conclusion because article 787 begins with these words: "At all elections under this title." The title is No. 22. Bond elections are not mentioned in this title .22. Bond elections for cities and towns are provided for by article 605, tit. 18. Under title 18, there is no statute prescribing the hours for opening and closing, and none making article

787 applicable to bond elections. Hence, in the absence of a special statute, the general statute (article 2912) controls, which reads:

"In all elections, general, special or primary, the polls shall be open from eight o'clock in the morning until seven o'clock in the evening."

[14] From the foregoing construction of the statutory requirement, it is not necessary to discuss the effect of closing an hour later than article 787 required. However, such statutes are directory, and the allegation excluded did not show any such variation from the statutory period, nor any circumstances that would materially affect the result of the election, and therein does the present case differ from that of Savage v. Umphries, 118 S. W. 893, decided by Justice Neill; Hash v. Ely, 100 S. W. 980.

The fifth assignment is overruled.

The judgment is affirmed.