In the Matter of the Application of ABE LEVENTHAL, Petitioner, for a Peremptory Mandamus Order against FREDERICK GILL-MORE, Mayor of the City of Utica, New York, Defendant.

Supreme Court, Oneida County, September 22, 1924.

Municipal corporations — sale of real property — mandamus to compel mayor of city of Utica to execute deed to certain premises described in contract of sale executed between Utica City Lands Commission and petitioner — Laws of 1923, chap. 98, creating commission, requires in § 1, that members at time of appointment shall be resident taxpayers of city of Utica — taxpayer defined — members of commission deemed eligible to office where both pay income tax to state on property owned within city of Utica and are holders of stock in local corporations — ordinance of common council of city of Utica authorizing commission to sell lands void under provisions of Second Class Cities Law, § 37 — commission without power to determine what land is to be sold — question of ownership of land may not be determined by peremptory mandamus proceeding — application denied.

Upon an application for a peremptory order of mandamus to compel the mayor of the city of Utica to execute to the petitioner a deed of certain premises described in a contract of sale between the petitioner and the Utica City Lands Commission, it appears that the commission, which was created by chapter 98 of the Laws of 1923, was required by section 1 to have as its personnel only persons who at the time of their appointment were resident taxpayers of the city of Utica; that, though two members of the said commission at the time of their appointment were not personally assessed on the assessment rolls for any real or personal property in the city of Utica and did not pay taxes thereon, they did pay an income tax to the state based on the income derived from personal property owned by them in the city of Utica and were holders of stock in local corporations; that the ordinance by which the commission was authorized to sell the land was passed by a vote of less than three-fourths of all the members of the common council of the city of Utica, though section 37 of the Second Class Cities Law requires a vote of three-fourths of the city council to enact an ordinance authorizing a sale or lease of city real estate; that the ordinance in

attempting to provide for the sale of the land failed to sufficiently describe the parcels eliminated from the sale for city needs and that the commission, in selling the lands, determined what lands were to be eliminated for the purposes of the city.

*Held,* that to constitute a taxpayer within the meaning of the statute, it is not necessary that the taxes due on property be actually assessed. One who owns property in a town or city subject to taxes is a taxpayer within the meaning of the statute.

The two commissioners to whom objection was raised were eligible to appointment as members of the Utica City Lands Commission within the meaning of section 1 of chapter 98 of the Laws of 1923, since each paid a tax to the city of Utica for the year covering their appointment in form of income tax, a portion of which was returned to the city, and each held stock in local corporations.

The ordinance authorizing the sale of the lands was void and of no effect since only eleven of the seventeen members of the common council of the city of Utica, less than three-fourths of all its members, were present at the session at which it was passed.

The ordinance passed by the common council being void, no authority remained in the commission to enter into a contract with the petitioner.

The ordinance did not properly designate the lands to be sold or exchanged since it failed to contain a sufficient description of the lands to be eliminated from the sale and allotted for the needs of the city and left to the commission the power of determining what lands were to be sold when under the statute under which it functioned (Laws of 1923, chap. 98) it had no such power.

Petitioner's application for a peremptory mandamus order in the first instance will be denied in the absence of a prayer for an alternative order since the question of ownership of the land creates a question of fact which should be tried in the usual manner.

APPLICATION for a peremptory order of mandamus.

*Ernest E. De Rosa* (*Warnick J. Kernan,* of counsel), for the petitioner.

*Clarence E. Williams,* corporation counsel, for the defendant.

MARTIN, LOUIS M., J. The petitioner herein prays for a peremptory order of mandamus, commanding and directing Frederick Gillmore, as mayor of the city of Utica, N. Y., to execute to the said petitioner, for the sum of one dollar consideration, a deed to certain premises described in a certain contract of sale made and executed May 29, 1924, between the Utica City Lands Commission and said petitioner, and being 7,928 square feet of land, more or less.

The Utica City Lands Commission was created by chapter 98 of the Laws of 1923, and the said commission now consists of Frederick J. Bowne, Clifford E. Lewis, Jr., and Spencer Kellogg, who duly qualified under said act and are acting as such commission.

The defendant, said Frederick Gillmore, as mayor, opposes this application on the following grounds:

(a) That the commission is not a legally constituted body for the alleged reason that two of the said commissioners, to wit,

Frederick J. Bowne and Clifford E. Lewis, Jr., are not qualified commissioners in that they, at the time of their appointment, were not resident taxpayers of said city of Utica.

(b) That the ordinance passed by the common council of the city of Utica, N. Y., authorizing the sale of lands by said commission was illegal and void under section 37 of the Second Class Cities Law in that only eleven aldermen were present and voting thereon, which was less than three-fourths of the number of the duly elected and qualified aldermen of said city, and that said section specifically provided that such an ordinance can only be passed by a vote of three-fourths of all the members of the common council, which at the time consisted of seventeen.

(c) That a question of fact as to the ownership of this property was raised by the return and answering affidavit of defendant filed herein, and, therefore, the petitioner is not entitled to such peremptory order.

The rule is well settled that upon a motion for a peremptory mandamus, " if opposing affidavits are read which conflict with the petition, the right to the relief must be determined upon the assumption that the averments of the opposing affidavits are true, and, if the petitioner desires to controvert or avoid the statements made in the opposing affidavits, he should take an alternative order, so that the questions of fact can be tried. Under this rule the statements of the answering affidavits, in so far as they conflict with those served in behalf of the petitioner, must be regarded as true." 2 Fiero Particular Actions (4th ed.), 1969.

No demand being made for an alternative order by petitioner, the situation created is equivalent to that of a demurrer (Id. 1970), and the answering affidavits are conclusive as to all disputed questions of fact.

In the examination of the defenses interposed herein there is created a situation that would lead to a decision that would obviate the necessity of a discussion of those remaining; however, their importance leads to the conclusion that all should be considered in their order as heretofore suggested.

The record before the court shows that at the time of the appointment of said Clifford E. Lewis, Jr., and of said Frederick J. Bowne, and since said time, they were not personally assessed on the assessment rolls for any real or personal property in the city of Utica, or paid taxes thereon.

However, it also appears from said record that during said period said Bowne paid taxes on real estate in said city standing on its assessment roll in the name of his wife; that during that

entire period he was the owner of personal property in said city of a value of over $1,000 liable to taxation; that during said period he was assessed and duly paid an income tax to the state of New York on his property, as scheduled; that he was the owner of 252 shares of stock of the par value of $100 each in the Bowne-Gaus Shoe Company in said city of Utica, and that said corporation was at the time the owner of real estate situate in said city and duly assessed on the assessment rolls of said city and that said corporation duly paid the taxes thereon during said period; that said corporation also during such period paid an income tax, a capital tax and a city tax on its personal property; that said Bowne was also a stockholder during such period in the Homestead Aid Association of said city, which was the owner of real estate in said city and which said real estate was properly assessed and on which a tax was duly paid to the said city during such time.

The said record further shows that said Lewis had paid taxes on real property in said city, assessed in the name of his wife, and up to a period in the year 1923 when the said realty was sold; that during the year 1923, as well as previously, he duly paid an income tax as scheduled to the state of New York; that during said period he was the owner of personal property worth over $1,000 and liable to assessment and taxation; that he was the owner of common and preferred stock in the Consolidated Water Company of Utica, N. Y., said corporation being the owner of real estate in said city and where it was duly assessed and taxed.

Under such conditions the question arises as to whether or not these men, said Frederick J. Bowne and said Clifford E. Lewis, Jr., were at the time " resident taxpayers " of the city of Utica, N. Y., the statute providing therein as follows: " A person at the time of his appointment to such office must be a resident taxpayer of the city." Laws of 1923, chap. 98, § 1.

There can be no question but that these two men met the requirements as to residence. Therefore, the only question here presented is, whether or not they were at said time, and are, taxpayers of the city of Utica?

In general a " taxpayer " is defined as " One who pays any tax, or is liable to pay any tax " (Standard Dict.); also as " one who pays a tax " (Webster Dict.); and as " a person chargeable with a tax; one from whom government demands a pecuniary contribution towards its support." Black L. Dict.

An examination of the authorities discloses no material variance from the foregoing and generally accepted definition. In *Matter of Kersburg*, 101 Misc. Rep. 241, 243; affd., 179 App. Div. 959, a " taxpayer " is defined as follows: " One owning property within

the territory subject to taxation. To constitute a taxpayer in the meaning of the statute, it is not necessary that the taxes due on his property should have been assessed. *Hillsman* v. *Faison,* 57 S. W. Rep. 920, 922; 23 Tex. Civ. App. 398." In *Winters* v. *Independent School District,* 208 S. W. Rep. 574, it was held: One otherwise qualified to vote at an election in an independent school district to determine whether or not the district should levy an additional school tax, is a " taxpaying voter " if liable for taxes on property, whether or not his property has been assessed for taxes. The qualification required in the last-mentioned case was that a voter should be a " taxpaying voter."

In *Kempen* v. *Bruns,* 195 S. W. Rep. 643, the constitutional requirement to vote on the proposition of the expenditure of money, or assumption of debt, was that an elector pay taxes in the towns or cities of the state and the same was defined as follows: " One who pays taxes has been construed to mean a taxpayer, and it has been determined that a taxpayer, in the meaning of the constitutional provision mentioned, is one who owns property in the town or city subject to taxes. *Hillsman* v. *Faison,* 83 Tex. Civ. App. 398. There is no law making the tax records the exclusive evidence that the voter is a taxpayer. Neither is it necessary that the property tax be actually paid."

" Taxpayer " is defined by the New York State Income Tax Law as follows: " Any person, trust or estate subject to a tax imposed by this article, or whose income is in whole or in part subject to a tax imposed by this article, and does not include corporations." Tax Law, § 350, subd. 2.

" A ' taxpayer ' is one who owns property within the municipality, and who pays a tax, or is subject to and liable for a tax." *State* v. *Moulton,* 189 Pac. Rep. 59, 61. " A taxpayer, as the term is generally used, is one who owns property within the state or taxing district and who pays *or is subject to and liable for a tax.*" 1 Cooley Tax. (4th ed.) § 17.

The said commissioners whose right to office is assailed herein both pay an income tax to the state of New York on property owned by them in the said city of Utica, a portion of which is returned by the state to the said city. They, therefore, paid a tax to the city of Utica for the year covering their appointment; and the fact that by process of administration the same was paid to the city aforesaid through the agency of the state cannot affect the situation. Both of these men also owned stock in corporations, each of which corporations being assessed for said year for real estate in the city of Utica, N. Y., and paying other taxes on income and personal property.

Stock in a corporation is an evidence of ownership of a certain portion of its property; and the owner receives a dividend on same from the income of the corporation. Taxes are a fixed charge on the income of a corporation, and the amount of dividend on one's stock is reduced in proportion to the amount of tax paid; and thus, while the actual title to the real estate may be in the corporate name, the actual owner is the stockholder, and a reduction of his dividend by a tax paid is a payment of tax by him, or on his account, on such property.

In 1906 the Village Law of this state (Laws of 1897, chap. 414, § 42) provided as to the qualifications of a person elected as president of a village as follows: " A president · * * * must at the time of his election and during his term, be the owner of property assessed upon the last preceding assessment roll of the village."

The qualification of one Remington, elected president of the village of Ticonderoga, N. Y., was assailed on the ground that he owned no property so assessed. It developed that he owned certain stock in the Ticonderoga Electric Light and Power Company, which corporation was so assessed for real and personal property on the last preceding assessment roll of the said village; and, on an application to remove the said president as such official, the attorney-general of New York held and stated in his opinion therein as follows: " The statute does not require that the candidate must be assessed upon the last preceding assessment-roll of the village, but that he must be the owner of property assessed thereon * * *. I am of the opinion that Mr. Remington comes within the spirit and intent of this act. He is the owner, and was at the time of his election, of property which was assessed upon the last preceding assessment-roll of the village, and was, therefore, eligible to the office of president of the village." *Matter of Hoyt,* Opinion Attorney-General, 1906.

In departing from the wording of the former statutes on qualification, limiting eligibility to assessment of property, and in the adopting of the broader one of "resident taxpayer" in the latter statute, the legislature evidently intended to qualify a larger number of available citizens for these public positions, recognizing the fact that many of them might, in fact, be large taxpayers under the various schemes of taxation now in effect, and yet not be freeholders, or personally on the assessment rolls, and thereby affording the municipality the benefit of their ability, experience and activity in public positions of trust.

It, therefore, follows that at the time of their appointment as commissioners upon the Utica City Lands Commission, as aforesaid, said Frederick J. Bowne and said Clifford E. Lewis, Jr., were

each eligible therefor, and that at all times since their said appointment, acceptance and qualifying as such members of said board or commission, each said commissioner has been duly qualified, vested and clothed with all the powers of said office as provided for in and by said act creating such commission.

Passing to the question of the validity of the ordinance of the common council of Utica, N. Y., of November 21, 1923, and to that of the power of this commission to act irrespective of such authority, it becomes necessary to refer to the rule of statutory construction, and to the evident intent of this legislation and the purpose for which it was enacted.

The statute of 1923 creating this commission contained no repealing clause. It was an act " to create a commission to act for the city of Utica in disposing of abandoned canal lands." If this act was in conflict with section 37 of the Second Class Cities Law, it would act to repeal such section. The legislature does not favor a repeal of a general law by a special act, and such repeals by implication are not to be assumed.

The following general rule can be safely followed in the instant case: " Both statutes will be given effect when they can stand together, and the repeal will not be declared unless it is clearly evidenced by appropriate language." 1 McKinney Consol. Laws, § 176.

No language indicating repeal is used in chapter 98 of the Laws of 1923. It simply created a sales agency for the city as a more advantageous method of disposing of its surplus canal lands, and the common council was to indicate and authorize the sale of such lands as it did not desire to retain for city purposes. Until this body acted for the city, the commission had no power in the premises. Section 4 of the act defines the power of this commission: " The commission shall have power to sell or exchange for other lands such portion of abandoned canal lands * * * as the common council shall not have determined to be necessary for city purposes."

This determination of the council indicated by the ordinance in question is an authorization to sell. The common council can act only through the power conferred by section 37 of the Second Class Cities Law. This section, as far as it applies to the present situation, reads as follows: " No ordinance shall be passed making or authorizing a sale or lease of city real estate * * * except by vote of three-fourths of all members of the common council." This authorization is regulated by the aforesaid statute, the terms of which must be strictly complied with. *City of Albany v. Goodman,* 203 App. Div. 530.

The city of Utica, by purchase, became the owner in fee of this valuable real estate. The evident intent of the legislature in its enactment of said section 37 of the Second Class Cities Law was to prevent a sale of the same or the authorization of the sale of the same unless such ordinance of authorization or sale was passed by a **vote** of three-fourths of all the members of the common council. Only eleven members were present when this ordinance was passed. The common council of the said city of Utica consisted of seventeen members; therefore, the ordinance of authorization so passed was void and of no effect, lacking as it did the required number of votes.

These two statutes are properly co-ordinate, creating an agency that can act for the city to sell its property under a proper ordinance by the common council; and, the ordinance in question being void, no authority remained in this commission to enter into said contract with petitioner.

A further situation also develops with reference to this said ordinance, viz.: It provides for the sale of certain lands, attempts to describe them, and then makes the following exceptions, " excepting that portion of said abandoned canal lands lying between the Delaware, Lackawanna and Western railroad not required for the widening of Jay street, Liberty street or Canal street; or not required for the construction of a new street from Genesee street to connect with Liberty street."

Who is to determine what land is not required for these purposes? The commissioners under chapter 98 of the Laws of 1923 have no such power. This was a duty of the common council; and its said ordinance should have contained a sufficient description of the lands eliminated by it, from city needs or necessity, to have enabled said commission to make a survey and proper description thereof, but without exercising the power of adjudication therein as to what lands are necessary or not necessary, which the statute gives them no authority to do. This commission had only the power to sell or exchange certain lands to be properly designated and placed under their control for that specific purpose; and beyond the proper exercise of such power, so restricted, their acts are void.

The last suggestion made as to the petition herein is that the affidavits and return raise an issue of fact, and, therefore, no peremptory order of mandamus can issue herein. It is evident that petitioner claims title to the land in question through purchase from a grantor claiming ownership of the same; and that this transfer from the city of land worth between five and six hundred dollars for the nominal consideration of one dollar, was to eliminate any so-called claim in and to said land by the city of Utica. No

doubt but the commission acted upon this theory when they signed said contract.

However, the return and affidavits must be treated on this motion as true and they set up the fact that this particular piece of realty was and is within the blue line of the old Erie canal; and that the same was taken over by the state of New York and damages therefor awarded to a prior owner thereof. And assuming, as it is necessary to assume, that this situation is true, it develops that petitioner's grantor had no title to convey to said petitioner, and that this real estate was, and is, the property in fee of the city of Utica, and, therefore, the said contract of sale, entered into as aforesaid, and under such a state of facts, could not be made the basis of a mandamus order of the kind herein prayed for.

It is idle to claim adverse possession, since that cannot be sustained against the state with reference to these canal lands. This question would have to be determined and settled before the right to this order could be sustained, and such adjustment cannot be made on a motion of this character. It is well settled that if the right to be enforced by mandamus is not entirely clear, the application therefor may be denied upon that ground. *People ex rel. Ajas* v. *Board of Education,* 104 App. Div. 162. Mandamus is intended to remedy a wrong, but not to promote one; and it will not issue " to compel the performance of an act which will work a public or private mischief." *People ex rel. Pierce* v. *Sohmer,* 167 App. Div. 437.

This question of ownership creates a question of fact that should be tried out in the regular manner. A material dispute of a serious question of fact has been injected into this proceeding which is a vital element to be determined before said contract can be enforced, if enforcible; and if the said city owns this property absolutely, it certainly should not be compelled to fulfill any such contract as the one under consideration, until a full and proper hearing and adjudication has been had therein on the merits, and the ownership to said premises of real estate duly determined and established.

Therefore, a peremptory mandamus order in the first instance cannot be granted herein; and as no other order is prayed for in the petition, it follows that the petition herein must be denied as to the relief sought and the said proceedings dismissed, without costs.

Findings and a decision along these lines may be submitted and judgment entered accordingly.

Judgment accordingly.